Deckard vs. State.

*Order affirmed.*

(Decided 25th June, 1873.)

JOHN C. DECKARD *vs.* THE STATE OF MARYLAND.

*Writ of Habeas corpus—Indictment for Perjury—Act of 1862, ch. 36—Sufficiency of the averments in an Indictment for Perjury.*

The doctrine that where a special limited jurisdiction, distinct from its general jurisdiction, is conferred by statute on any tribunal, its power to act must appear on tha face of the proceedings, does not apply to proceedings in cases of *habeas corpus.*

The writ of *habeas corpus* is a common law writ having for its great object the liberation of persons imprisoned without sufficient cause; and the provisions of Article 43 of the Code were enacted for the purpose of enforcing the common law, and of securing to the citizen the benefits for which the writ was given, by preventing oppression consequent upon its evasion or delay in its issual and return.

In an indictment for perjury alleged to have been committed at the inquiry arising before a Judge upon return to a writ of *habeas corpus* actually executed, it is not necessary, in order to show that the false testimony was given in a *judicial proceeding*, or that the Judge had jurisdiction in the matter, to aver that in the particular case the party brought up under the writ was not embraced by the first of the provisos of the Act of 1862, ch. 36, or that the application was in conformity with either of the other two.

An indictment for perjury stated in direct and positive terms that Judge M., Associate Judge of the Circuit Court for Washington County, by virtue of the authority vested in him by the Constitution and laws of this State, did, upon the petition and application of a certain J. C. M., order the writ of *habeas corpus* to be issued out of the said Circuit Court directed to the sheriff of said county, commanding him to produce the body of the said J. C. M. held in confinement by him, together with the cause of his detention, and that the writ be returnable immediately at a designated place before the said Judge; that the writ did issue as directed, and the sheriff in obedience to it did produce the body of the said J. C. M. together with the cause of his detention and confinement, at the appointed place and time before the said Judge. HELD:

That these averments were quite sufficient to show that the enquiry thereupon instituted by the Judge into the legality, cause and propriety of the confinement and detention of the party, was a judicial proceeding before a competent jurisdiction.

The same indictment then proceeded to aver, in substance, that J. C. M. pleaded that he had committed no offence, and that there was no sufficient legal cause for his detention, and the Judge thereupon proceeded to enquire into the legality, cause and propriety of his confinement and detention; that while the Judge was conducting the enquiry, the traverser appeared before him as a witness in support of the legality of J C. M's confinement and detention, and having been duly affirmed, did, in order to prevent the Judge from knowing the truth, and to continue the imprisonment and detention of J. C. M., wilfully, falsely, corruptly and knowingly commit perjury upon his affirmation, by deposing and affirming in answer to questions propounded to him in the matter depending before the said Judge, among other things, in substance to the effect following, that is to say, that the said J. C. M. and eight other named persons, five or six weeks ago (meaning five or six weeks before the making of said affirmation,) on one night about nine or ten o'clock, did enter together into the saloon of D. W. kept in the house of J. P., and having entered the saloon as aforesaid, some one of the above named persons said, "let us break down John C. Deckard, let us swear against him," and that the others of the above named persons assented to the same, and that they did then and there enter into a conspiracy against him the said John C. Deckard. This was followed by the requisite averments of the falsity of the statement and testimony so given. The indictment then went on to state: "And the jurors aforesaid, upon their oath aforesaid, do further present that it *then and there* became *necessary* and *material* that the said Judge should know whether the said" named parties "did enter together the said saloon" at the time testified to by the traverser, "and whether having entered as

aforesaid, they did then and there, in the said saloon, agree to break down the traverser and swear against him, and did then and there enter into a conspiracy against him." HELD:

That the indictment averred with sufficient distinctness and clearness the materiality of the false testimony to the subject of the enquiry pending before the Judge.

In the same indictment it was averred that the traverser did before the said Judge (who had competent authority to administer the same) "in due form of law solemnly and sincerely declare and affirm that the evidence that he should give in the matter depending *before the Court*, should be the truth, the whole truth and nothing but the truth." HELD:

That the indictment was not defective in stating that the affirmation was made in a matter " depending *before the Court*," instead of in a matter depending before the Judge—it was a departure from the exact words of the proper affirmation in matter, not of substance, but of form merely, and did not exempt the traverser who made it, from the pains of perjury, if under it he wilfully gave false testimony material to the enquiry then depending before the Judge out of Court.

APPEAL from the Circuit Court for Frederick County. The appellant was indicted for perjury in the Circuit Court for Washington County. The indictment which was transmitted to the Circuit Court for Frederick County for trial, was in the following form:

STATE OF MARYLAND, Washington County, to wit:

The jurors of the State of Maryland, for the body of Washington County, do on their oaths present, that heretofore, to wit, on the 11th of. July, 1872, the Honorable WILLIAM MOTTER, Associate Judge of the Circuit Court for Washington County, by the authority vested in him by the Constitution and laws of the said State, upon the petition and application of a certain J. Clarence Mobley, ordered that the State's writ of *habeas corpus* issue out of the said Circuit Court for Washington County, directed to Robert C. Bamford, the sheriff of the said county, commanding him, the said sheriff, to

produce the body of the said J. Clarence Mobley, held in confinement by him, together with the cause of the detention of him, the said J. Clarence Mobley, and that the said writ of *habeas corpus* be returned immediately at the basement of the Methodist Episcopal Church in Hagerstown, before the Honorable WILLIAM MOTTER, Associate Judge as aforesaid.

And the jurors aforesaid, upon their oath aforesaid, do further present, that the said writ of *habeas corpus* did issue as ordered by the said Judge, directed to the said Robert C. Bamford, sheriff as aforesaid; and the said sheriff, according to the exigency of the said writ, did produce the body of the said J. Clarence Mobley, with the cause of his detention and confinement, before the said WILLIAM MOTTER, Associate Judge of the Circuit Court for Washington County as aforesaid, at the basement of the said Methodist Episcopal Church in Hagerstown, on the said 11th of July, 1872.

And the jurors aforesaid upon their oath aforesaid, do further present, that the said J. Clarence Mobley, produced as aforesaid, by the sheriff aforesaid, before the Honorable WILLIAM MOTTER, Associate Judge as aforesaid, did, on his own behalf and by his counsel, plead that he the said J. Clarence Mobley, did commit no offence, and that there was no sufficient legal cause for his detention and confinement by the said sheriff as aforesaid; and that the said Judge did then and there, to wit: on the said 11th of July, 1872, inquire into the legality, cause and propriety of the confinement and detention of the said J. Clarence Mobley as aforesaid.

And the jurors aforesaid, upon their oath aforesaid, do further present, that while the said Judge was inquiring into the legality, cause and propriety of the confinement and detention of the said J. Clarence Mobley as aforesaid, one John C. Deckard, late of Washington County aforesaid, yeoman, did then and there, to wit: on the said 11th

of July, 1872, at Washington County aforesaid, appear before the said Judge as a witness in support of the legality of the said confinement and detention of the said J. Clarence Mobley, and did then and there, before the said Honorable WILLIAM MOTTER, Associate Judge as aforesaid, in due form of law, solemnly and sincerely declare and affirm, that the evidence that he. the said John C. Deckard, should give in the matter depending before the Court, (the legality and propriety of the confinement and detention of the said J. Clarence Mobley as aforesaid, then and there depending before the said Judge and Court,) should be the truth, the whole truth and nothing but the truth; (he, the said Honorable WILLIAM MOTTER, Judge as aforesaid, then and there having sufficient and competent authority to administer the said affirmation to the said John C. Deckard in that behalf.) And the said John C. Deckard having affirmed as aforesaid then and there, to wit, on the said 11th day of July, 1872, at Washington County aforesaid, to prevent the said Judge of the said Court, from knowing the truth, and to continue the imprisonment and detention of the said J. Clarence Mobley, did, upon his affirmation, in answer to the questions propounded to him in the matter then and there depending before the said Judge of the said Court, (the said Judge of the said Court having then and there sufficient and competent authority to administer an affirmation to the said John C. Deckard, and to propound, and to permit to be propounded questions on that behalf to him) then and there wilfully, falsely, corruptly and knowingly, by his own act and consent, commit perjury upon his affirmation, in saying, deposing, affirming and declaring in answer to the questions propounded as aforesaid, (amongst other things) in substance to the effect following, that is to say, that the said J. Clarence Mobley, Daniel Ward, Jacob H. Zook, Joseph Bombarger, Oliver Ridenour, George Dusang, John Wright,

John W. Adams and James Pickett, five or six weeks ago, (meaning five or six weeks before the time of making said affirmation,) on one night, about nine or ten o'clock, did enter together into the saloon of Daniel Ward, kept in the house of James Pickett, and having entered the said saloon as aforesaid, some one of the above named persons in the said saloon said, "Let us break down Deckard, let us swear against him;" and that the others of the above named persons agreed and assented to the same, and that they did then and there enter into a conspiracy against him, the said John C. Deckard; whereas, in truth and in fact, the said J. Clarence Mobley, Daniel Ward, Jacob H. Zook, Joseph Bombarger, Oliver Ridenour, George Dusang, John Wright, John W. Adams and James Pickett, did not enter together into the said saloon of Daniel Ward, kept in the house of the said James Pickett, at the time alleged by the said John C. Deckard in his said affirmation, or at any other time; and whereas, in fact and in truth the above named persons were not together in the said saloon, nor did any one of them say to the others, "Let us break Deckard down, let us swear against him;" nor did they or any of them then and there give any assent to the same, or agreed to do the same, or enter into a conspiracy against him, the said John C. Deckard.

And the jurors aforesaid, upon their oath aforesaid, do further present, that it then and there became necessary and material that the said Judge of the said Court should know whether the said J. Clarence Mobley, Daniel Ward, Jacob H. Zook, Joseph Bombarger, Oliver Ridenour, George Dusang, John Wright, John W. Adams and James Pickett, did enter together the said saloon five or six weeks before the making of the said affirmation by the said John C. Deckard, and whether, having entered as aforesaid, they did then and there, in the said saloon, agree to break down Deckard and swear against him,

and did then and there enter into a conspiracy against him.

And so the jurors aforesaid, upon their oath aforesaid, do say, that the said John C. Deckard, on the said 11th day of July, 1872, at Washington County aforesaid, before the said Judge of the said Court, (he, the said Judge, then and there having sufficient and competent authority as aforesaid,) upon his solemn affirmation aforesaid, by his own act and consent, and of his own most wicked and corrupt mind, in a matter depending before the said Judge of the Circuit Court for Washington County, did wilfully, corruptly, falsely and knowingly commit perjury, contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the State.

To the foregoing indictment, the traverser entered a general demurrer, which was overruled by the Court. He thereupon entered his plea of "Not Guilty," and trial being had, the jury rendered a verdict of guilty.

*Exception.*—On the trial of this cause, it was proved on behalf of the State, that a certain J. Clarence Mobley, was arrested in July, 1872, in Hagerstown, and taken before a justice of the peace for Washington County, who upon a hearing, committed him to the jail of said county; that on the same day the said Mobley caused to be issued out of the Circuit Court for Washington County, the writ of *habeas corpus*, directing the sheriff of said county to produce said Mobley, with the cause of his commitment, before Judge MOTTER, one of the Associate Judges of the Circuit Court for said county; that in obedience to said writ, the sheriff did produce said Mobley, before the said Judge, on the same day; that the Judge had a hearing before him relative to the detention of said Mobley, and examined witnesses; that the traverser, John C. Deckard, was a witness at said hearing, and deposed that four or five weeks before the time of the hearing then going on; he

was taking a walk about nine o'clock at night in Hagers-town : that he saw some parties coming up the street in the direction of Ward's Saloon, and thinking something was wrong, he stopped nearly opposite the saloon, about twenty-five yards therefrom, and whilst there, he saw the said J. Clarence Mobley and Oliver Ridenour, Daniel Ward, Jacob H. Zook, Joseph Bombarger, George Du-sang, John Wright, John W. Adams and James Pickett come up the street, and go into the said saloon ; that he then crossed the street, and listened at the door of the saloon, when he heard some one of those inside say: "Let's break down Deckard—let's swear against him." After offering other testimony to sustain the indictment, the State closed. The traverser then offered to prove by one —— Bryan, that some time previous to the time· spoken of by the traverser, when he saw said parties go into said saloon, he, (Bryan,) before the arrest of Mobley had a conversation with John W. Adams, one of the parties whom the traverser deposed he saw go into said saloon, and that Adams said, that he and other of said parties said they would swear against Deckard, and send him to the penitentiary, and that these declarations of Adams were communicated to the traverser before the arrest of Mobley. To this testimony, the State objected, and the Court sustained the objection. The traverser thereupon excepted, and afterwards took this appeal.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, GRASON and MILLER, J.

*Frederick J. Nelson,* for the appellant.

The indictment is bad, firstly, because it fails to show that the judge had jurisdiction of the question concern-ing which the alleged perjury was committed. There can be no perjury where the oath is not taken before a

competent jurisdiction. *The King vs. Aylett*, 1 *Term*, 63, 69.

The jurisdiction of the Judge in the matter of *habeas corpus* is special and limited under the Act of 1862, ch. 36, and Act of 1867, ch. 144. Where a special, limited jurisdiction, distinct from its general jurisdiction, is conferred by an Act of Assembly on *any tribunal*, its power to act must appear upon the face of the proceedings. *Bruce & Fisher vs. Cook*, 6 *G. & J.*, 347.

For anything which appears in this indictment, Mobley may have been, 1st. committed or detained "for treason or felony plainly expressed in the warrant of commitment," or may have been "convict or in execution by legal process" and if so, clearly the Judge had no jurisdiction over his person by *habeas corpus ;* or he may have been, 2nd, "detained under color of a warrant of commitment ;" in which event, the Judge could have no jurisdiction by *habeas corpus*, unless the "petition presented by him was accompanied by a copy of the warrant of commitment, or detainer, or cause of commitment or detainer, or otherwise by an affidavit that a copy thereof was demanded by him of the person in whose custody he was detained, and the same was neglected or refused to be given ;" or that he was, 3rd, detained "on other color or pretence" (than a warrant of commitment ;) in which event, the Judge had no jurisdiction by *habeas corpus* until there was "probable ground shown to him" that the said Mobley was detained "without just cause." *Act of* 1862, *ch.* 36. It will be observed, that each of these provisos of the statute constitutes a condition precedent to the power of the Judge to issue the writ of *habeas corpus.* Not only does this indictment *fail* to shew on its face these *foundations of jurisdiction*, but it expressly negatives the jurisdiction by showing that Mobley was detained "under color of a warrant of commitment ;" "said sheriff, &c., did produce the

body, &c., *with the cause of his detention and confinement,*" without the allegation that the petition was accompanied by a copy of said "cause of detention or confinement," or an "affidavit," accounting for the absence of the same. *Queen vs. Overton,* 4 *Adol. & Ellis,* 83, (45 *Eng. C. L.*;) *Queen vs. Rawlins,* 8 *Carr. & Payne,* 439.

Secondly. The indictment is bad, because it does not appear that the oath was taken in a judicial proceeding. The matter depending before the Judge was, "the legality, cause and propriety of the confinement and detention" of said Mobley. Before Judge Motter could be clothed with the judicial authority to make this inquiry, it was requisite that the Act of Assembly already quoted should have been complied with. Unless it was, whatever his judicial character otherwise, in a matter of *habeas corpus,* he was clothed with no more power than a layman. Where there is no judicial power, there can be no judicial proceeding.

Thirdly. The indictment is bad, because it does not appear that the oath was material to the question depending. The question depending was the "legality, cause and propriety of the confinement and detention of Mobley."

The facts sworn to by Deckard were that "the said Mobley, &c., &c , did enter together into the saloon of Daniel Ward, &c., and having entered the said saloon as aforesaid, some one of the above named persons in said saloon said, 'Let us break down Deckard; let us swear against him;'" and that the others of the above named persons agreed and assented to the same; and that they did then and there enter into a conspiracy against him, the said John C. Deckard.

In what manner are these facts, thus sworn to, material to the inquiry then depending before the Judge? It is not alleged that the inquiry was as to whether Mobley was guilty of a conspiracy.

It is manifest that the materiality of the oath to the "question depending" does not appear upon the face of the indictment. Does the allegation of materiality supply this deficiency? If so, is the averment of materiality properly made? The language of the indictment is, "and the jurors aforesaid, upon their oaths aforesaid, do further present, that it *then and there* became necessary and material that *the said Judge of the said Court should know* whether the said J. Clarence Mobley, &c., did enter," &c., &c. This averment is insufficient in not having stated that it then and there became material *to the matter or inquiry then depending*, &c. Where, upon an indictment for perjury, in an answer to a bill in equity, the averment was, that it then and there became a material question, whether, &c., *without saying "upon the hearing," &c., or "in the suit,"* it was holden insufficient. 3 *Arch. C. P.*, 598, (*top paging.*) *Rex vs. Cutts*, 14 *Shaw's J. P.*, 655; *Regina vs. Bartholomew*, 1 *Carr. & Kir.*, 366.

This language cannot be supplied by inference; for this would be to violate the well-known rule of criminal law, that the want of a direct allegation of anything material in the description of the substance, nature or manner of the crime cannot be supplied by any intendment or implication whatever. 2 *Hawkins' P. C., Ch.* 25, *sec.* 62.

It is of the very substance of the crime of perjury that the oath should be not only material, but material to *the question depending*.

Fourthly. The indictment is bad, because in the assignment of the perjury, in the conclusion of the same indictment, it is not alleged that the false affirmation was taken in the same proceeding which, throughout the other parts of the indictment, was alleged as pending, &c. The allegation is that, in *a* matter depending, &c., the perjury was committed, without in any way referring

Deckard *vs.* State.

to any preceding averment. Without the aid of inference, for any thing that is apparent in the indictment, there may have been *two matters* depending.

Fifthly. The indictment is bad, because it shows that the *affirmation* of said Deckard, was made in a matter "depending before the Court;" whereas, the testimony of said Deckard was given in a matter depending before Judge Motter of the Circuit Court for Washington County.

The "Court," and a "Judge of a Court," are separate tribunals in matters of *habeas corpus*, by the express terms of the Act of Assembly of 1867, chap. 144.

The indictment is clearly bad, and the demurrer thereto should have been sustained.

*Attorney-General Syester,* for the State.

It is contended by the appellant, that it does not appear from any thing properly alleged in the indictment, that Judge Motter had jurisdiction of the matters and things brought before him in the matter of the suit of *habeas corpus*; and that the whole proceedings were *coram non judice* and void; and therefore, whatever was false in the oath of the party, was not perjury; that "for anything which appears in the indictment, Mobley may may have been committed or detained" under conditions and circumstances set out in the three provisos in the 3rd sec. of the 43rd Art. in the Code; and *if so committed* and detained, the Judge had no jurisdiction in the premises. *Mobley had no right* to the writ; and counsel enumerates the several conditions or circumstances, and says of them, "each of these provisos of the statute constitute *conditions precedent to the power of the* Judge to issue the writ of *habeas corpus.*

It cannot be possible that a party "committed and detained" in jail "for felony, plainly expressed in the warrant of commitment," is not entitled to the writ of

*habeas corpus.* For that would be, in the very teeth of the concluding paragraph of the 3rd sec. of Art. 43 of the Code, which expressly declares, that "*nothing*" therein "shall prevent the *issuing* of a *writ* of *habeas corpus*, at the instance of a person arrested on a charge of any offence, bailable by law," unless it is said that a party "*charged* with felony" is not entitled to be bailed.

The only "conditions precedent" are *confinement* and *detention*, and the application for relief to some officer clothed with power to hear the complaint ; these are the special circumstances which constitute the right to this writ.

This is not the case of a party proceeding by force of a particular statute, out of the course of the common law. The power and duty of a judge to issue, and *the right of the citizen to the benefit of this writ*, is not "special" in the sense that the duty and right originated under and exists by virtue of the statute. Nor "limited" in the sense that in order to avail himself of the benefits of the writ, the injured citizen must strictly conform to particular proceedings specially enumerated in the statute.

No new right was established; no new remedy was given; the statute does not define and limit the right to modes of procedure unknown to the common law.

In the case at bar everything necessary to clothe the Judge with jurisdiction is distinctly stated, to wit, the petition of Mobley, the granting the writ, the return thereof, and the production of the body of the petitioner, together with the cause of his detention. These circumstances were enough to invest the Judge with power to inquire into the case presented. *See Art.* 43, *sec.* 10 *of the Code.*

And such an inquiry was, beyond all question, a judicial inquiry.

It is said by the appellant that "it does not appear that the oath was material to the question depending."

The materiality of the false testimony may be shown in one of two ways—either by way of recital and statement of facts in the record, which show the materiality, or by *direct averment.* In this case, it is alleged in the indictment that it "then and there became necessary and material that the Judge * * should know whether the said J Clarence Mobley, &c., did enter," &c. And the fact is found to be so by the verdict. *Regina vs. Bennett,* 4 *E. L. & Equity R.,* 560; 2 *Bish. Cr. Proc., sec.* 845, *and authorities cited in note* 1; 3 *Arch. C. P.,* 597–8.

But it is said, that notwithstanding the averment of the materiality of the question inquired into by the Judge, yet the facts set out show that the *false testimony* was not in point of fact material to the subject-matter of the inquiry then depending before the Judge. The indictment says that it became material to know "whether Mobley (and others) did enter together the saloon, and whether, having entered, they did 'agree to *break down Deckard, and swear against him.'* "

That is averred as material to be inquired into. The false testimony alleged is, that Deckard swore that some one of the parties said, "Let us *break down Deckard,* let us swear against him." And that others of the parties "agreed and assented to the same," &c. If the subject inquired into, and alleged to be material, was really material to the inquiry at all, surely Deckard's testimony is alleged by this indictment to be directly and distinctly in response or answer to that inquiry. He swore that the very facts alleged to be material were true, every one of them.

It is also said, the indictment should in *totidem verbis* allege that all this was material "to the inquiry then depending" In answer to this objection, it is sufficient to say that the indictment had already recited the fact that the writ had issued—that *there was a return,* with the cause of detention, and that it *then* (on that return) became necessary and material to know, &c.

That the inquiry *was upon the hearing* of the matters arising on the return of the writ of *habeas corpus,* and that there was no other matter, question or thing depending, would seem to be very plain.

The previous statement of the return of the writ; and that the said Judge did then and there inquire into the legality, cause and propriety of the confinement and detention of Mobley, coupled with the statement that it *" then* and *there* became material * * to know," leaves no room for doubt, conjecture or inference that the inquiry was upon the return of the writ, and into the legality, &c., of the confinement.

MILLER, J., delivered the opinion of the Court.

The appellant has been tried and found guilty of the crime of perjury. The only matter to be reviewed on this appeal is the judgment overruling a general demurrer to the indictment. The exception taken at the trial to the ruling upon the admissibility of evidence has been very properly abandoned in this Court without argument. The correctness of that ruling is too clear to admit of a moment's doubt, and if the appeal rested alone upon that exception, there would have been great impropriety of conduct on the part of counsel for the accused in making the affidavit required by the Act of 1872, ch. 316. That Act has introduced a new feature into the administration of criminal law in this State. It allows exceptions to be taken in criminal trials to any ruling or determination of the Court in the same manner as is now practiced in civil cases, and gives an appeal from such ruling or determination, provided the *counsel for the accused shall make oath that such appeal is not taken for delay.* This proviso was inserted for the purpose of preventing delay in the punishment of offences, by appeals on points too plain to be controverted. It does not permit a *party* found guilty of crime to secure a postponement of punish-

ment consequent upon an appeal, by taking this oath, but requires it to be made in all cases where the accused is the appellant, by his *counsel,* thus requiring a solemn pledge from the judgment and conscience of one who is a member of a learned and honorable profession, that he believes the rulings against his client are erroneous. It is the duty of this Court to see to it, so far as it may have power, that the intention of the Legislature in imposing this wholesome and salutary restriction upon appeals in such cases is not defeated. But we assume this affidavit was made not in view of the exception referred to, but of the judgment overruling the demurrer to the indictment, and was hence very properly made.

The perjury assigned is giving wilfully on affirmation, false testimony material to an inquiry into the legality, cause and propriety of the confinement and detention of a party brought before Judge MOTTER, Associate Judge of the Circuit Court for Washington County, upon a writ of *habeas corpus.* It is not doubted that false testimony material to the issue, wilfully given under oath on such an inquiry, would be perjury at common law, as being given in a judicial proceeding, or course of justice, and is therefore within the first class of cases which the Code (Art. 30, sec. 155,) declares shall be deemed perjury. The question then is, does this indictment sufficiently charge the offence? There may be in it unnecessary diffuseness of statement, and much that must be rejected as surplusage, but this does not vitiate it, provided the Court can see that it sets forth the substance of the offence charged, and that all matters material to constitute the crime, are alleged with such positiveness and directness, as not to need the aid of intendment or implication. It must also be remembered, that the first and second sections of the Statute of 23 *Geo.* 2, *cap.* 11, enacted in 1750, entitled "An Act to render prosecutions for perjury, and subornation of perjury, more easy and effectual" are in force in

Deckard *vs.* State.

this State. *Kilty's Report of Statutes,* 252; *Alexander's British Statutes,* 766. That statute after reciting in its preamble that "by reason of difficulties attending prosecutions for perjury and subornation of perjury, those heinous crimes have frequently gone unpunished, whereby wicked and evil disposed persons are daily more and more emboldened to commit the same, to the great dishonor of God and manifest let and hindrance of justice," provides by its first section, "that in every information or indictment to be prosecuted against any person for wilful and corrupt perjury, it shall be sufficient to set forth the substance of the offence charged upon the defendant, and by what Court, or before whom the oath was taken, (averring such Court, or person or persons, to have a competent authority to administer the same,) together with the proper averment or averments to falsify the matter or matters wherein the perjury or perjuries is or are assigned, without setting forth the bill, answer, information, indictment, declaration or any part of any record or proceeding, either in law or equity, other than as aforesaid; and without setting forth the commission or authority of the Court or person or persons, before whom the perjury was committed; any law, usage or custom to the contrary notwithstanding." With these preliminary remarks we proceed to consider the several objections to this indictment presented by the very able and ingenious argument of the appellant's counsel.

1st. The first objection is that the indictment fails to show that the Judge had jurisdiction of the question concerning which the alleged perjury was committed. It has been decided (*Overton's case,* 45 *Eng. C. L. Rep.,* 83,) that the Statute of 23, *Geo.* 2, does not dispense with the necessity of showing distinctly in the indictment, that the false oath was taken in a judicial proceeding, and it is argued that the jurisdiction of a Judge in matters of *habeas corpus,* is, in this State, special and limited under our

Acts of Assembly, and the familiar doctrine is invoked, that where a special limited jurisdiction, distinct from its general jurisdiction is conferred by statute on any tribunal, its power to act must appear on the face of the proceedings. But in our judgment, this doctrine does not apply to proceedings in cases of *habeas corpus.* They are not simply proceedings authorized by special statutes which require certain things to be done as conditions precedent, and before authority to act is conferred. The writ of *habeas corpus* is a common law writ, having for its great object the liberation of persons imprisoned without sufficient cause. The provisions of our Code, like those of the celebrated Statute of 31, *Charles* 2, were enacted for the purpose of enforcing the common law, and of securing to the citizen the benefits for which the writ was given, by preventing oppression consequent upon its evasion or delay in its issual and return. Hence, Courts and Judges are clothed with jurisdiction and power to issue it at all times and in all places throughout the State. An immediate or speedy return with production of the body and cause of detention is secured, punishment is prescribed for officers who refuse or neglect to execute it, the Judge who refuses to issue it is made liable to an action by the party aggrieved, and a person once discharged under it is exempted from being again imprisoned for the same offence unless surrendered by his bail or convicted of the offence for which he gave bail. It is thus that the common law is enforced. The first section of the Article in the Code on *habeas corpus* as amended by the Act of 1867, ch. 144, provides that "the several Circuit Courts of this State and the Circuit Court of Baltimore City, and the several and respective Judges thereof out of Court, and each of the Judges of the Court of Appeals shall have jurisdiction over the whole State in all matters relative to *habeas corpus*, except those involving the relation of master and apprentice."

This confers jurisdiction in the broadest and most general terms over a common law writ. The Act of 1862, ch. 36, repeals the original third section of the Article in the Code, and enacts in lieu thereof, that "if any person be committed or detained for any crime, or under any color or pretence whatsoever, he or any one on his behalf may complain by petition to any one of the Courts or Judges mentioned in the first section of this Article, and the said Court or Judge shall forthwith grant a writ of *habeas corpus*, directed to the officer or other person in whose custody the party detained shall be, returnable immediately before the said Court or Judge granting the same : *provided*, the person detained be not committed or detained for treason or felony, plainly expressed in the warrant of commitment, or be not convict, or in execution by legal process : *and provided*, that if the person detained be so detained under color of a warrant of commitment, the petition presented by him or on his behalf accompanied by a copy of the warrant of commitment or detainer or cause of commitment or detainer, or otherwise by an affidavit that a copy thereof was demanded by him of the person in whose custody the prisoner is detained, and the same was neglected or refused to be given : *and provided*, that if the detainer is on any other color or pretence, there be probable ground shown to the Court or Judge, that the person by or on whose behalf the said application is made, is detained without just cause : but nothing herein shall prevent the issuing of a writ of *habeas corpus*, at the instance of a person arrested on a charge of any offence, which is bailable by law, in order that he may be discharged on bail in the usual course of law." The provisos in this Act are specially relied on by the appellant's counsel, his contention being that they constitute conditions precedent to the power of the Judge to issue the writ, and must be negatived or conformed with in all cases before jurisdiction attaches. What may

be their true construction or effect in connection with other sections of the Article still in force, and in view of the universal practice under them, need not now be determined. It is plain however, that the utmost effect that can be attributed to them is, that they except as did the Statute of Charles, from those entitled to the benefit of the writ, parties convicted or in execution, and (save for the purpose of being bailed,) parties committed for felony or treason plainly expressed in the warrant, and in other cases prescribe certain formalities in reference to the petition for the writ without the observance of which the application *may be refused.* But the precise question we are now dealing with, is whether in an indictment for perjury alleged to have been committed at the inquiry arising before a Judge upon return to a writ of *habeas corpus actually executed,* it is necessary, in order to show that the false testimony was given in a *judicial proceeding,* or that the Judge had *jurisdiction in* the matter, to aver that in the particular case the party brought up under the writ was not embraced by the first of these provisos, or that the application was in conformity with either of the other two. In view of the nature of the proceeding in such cases, and the terms in which jurisdiction is conferred, and after a most careful consideration of the subject, we are of opinion no such averment is necessary. It is averred in this indictment in direct and positive terms, that Judge MOTTER, Associate Judge of the Circuit Court for Washington County, by virtue of the authority vested in him by the Constitution and laws of this State, did, upon the petition and application of a certain J. Clarence Mobley, order the writ of *habeas corpus,* to be issued out of the said Circuit Court, directed to the Sheriff of said County, commanding him to produce the body of the said Mobley held in confinement by him, together with the cause of his detention, and that the writ be returnable immediately at a desig-

nated place before the said Judge: that the writ did issue as directed, and the sheriff in obedience to it did produce the body of the said Mobley, together with the cause of his detention and confinement, at the appointed place and time, before the said Judge. These averments are quite sufficient to show that the inquiry thereupon instituted by the Judge into the legality, cause and propriety of the confinement and detention of the party, was a judicial proceeding before a competent jurisdiction. This jurisdiction is altogether different from the limited and special jurisdiction conferred by our attachment laws, as well as that conferred upon Courts or Commissioners by statutes providing for the opening of roads and other like purposes. It is also equally unlike those upon which were based the decisions in *Overton's Case*, 4 *Adol. & Ellis, N. S.*, 83, and *Rawlin's Case*, 8 *Carr. & Payne*, 439.

2nd. The next objection of most importance, is, that the materiality of the false testimony to the issue or question depending, is not sufficiently averred. This materiality must appear in one of two ways, either upon the face of the indictment, or by express averment. It may sufficiently appear to be material from the nature of the evidence itself, or from certain facts stated by way of inducement in the commencement of the indictment, or its materiality may be stated by way of averment. But it is sufficient that this appears in one of these two methods; it need not be made so to appear by both. 3 *Arch. Cr. Pr. & Pl.*, 598; 2 *Chitty's Cr. Law*, 309; 2 *Bishop's Cr. Procedure*, sec. 854. After averring the issue and return of the writ as before stated, the indictment proceeds to aver, in substance, that Mobley pleaded that he had committed no offence, and that there was no sufficient legal cause for his detention, and the Judge thereupon proceeded to inquire into the legality, cause, and propriety of his confinement and detention; that

while the Judge was conducting this inquiry, the appellant appeared before him as a witness in support of the legality of Mobley's confinement and detention, and having been duly affirmed, did, in order to prevent the Judge from knowing the truth, and to continue the imprisonment and detention of Mobley, wilfully, falsely, corruptly, and knowingly, commit perjury upon his affirmation, by deposing and affirming in answer to questions propounded to him, in the matter depending before the said Judge, among other things in substance, to the effect following, that is to say, that the said Mobley and eight other named persons, "five or six weeks ago, (meaning five or six weeks before the making of said affirmation,) on one night about nine or ten o'clock, did enter together into the saloon of Daniel Ward, kept in the house of James Pickett, and having entered the saloon as aforesaid, some one of the above named persons said, let us break down Deckard, let us swear against him, and that the others of the above named persons assented to the same, and that they did then and there, enter into a conspiracy against him, the said John C. Deckard." This is followed by the requisite averments of the falsity of the statement and testimony so given. It is matter of much doubt, whether the materiality of this testimony to the pending investigation be not sufficiently apparent from this statement of it, as showing if true, that Mobley was a party with others, to a *conspiracy* to injure the appellant by swearing against him, and breaking him down, and therefore, rendering his detention and confinement on that *charge* legal and proper, until he gave bail to appear and answer it. But the materiality of this testimony is expressly averred in these terms: "And the jurors aforesaid, upon their oath aforesaid, do further present, that it *then and there* became necessary and material that the said Judge of the said Court, should know whether the said" named

parties, "did enter together the said saloon" at the time testified to by the appellant, "and whether having entered as aforesaid, they did then and there, in the said saloon, agree to break down the appellant, and swear against him, and did then and there enter into a conspiracy against him." This averment immediately follows those already stated, and its sufficiency has been strenuously assailed upon the ground that it omits to state *in totidem verbis*, that it became necessary and material for the Judge to know this *in the matter of the inquiry then depending before him.* The argument is that for anything that appears in the indictment, it *might have been* material and necessary for the Judge to know it in *some other matter.* In support of this position we are referred to the case of *Regina vs. Bartholomew*, 1 *Carr. & Kir.*, 366. That was an indictment for perjury by a witness in evidence given by him before a magistrate, (Thomas Scott,) upon an information against one Liversuch, for trespassing in search of game. The indictment after stating the information, and that the defendant was sworn, and stated on oath that he did not see Liversuch on the 12th of August, 1843, alleged the materiality thus: "And the jurors, &c., further present, that *at the time*, &c., the said " defendant "swore as aforesaid, it was material and necessary for the said Thomas Scott, so being such justice as aforesaid, to inquire of and be informed by the said" defendant, whether he did see Liversuch during the said 12th day of August, in the year aforesaid. In deciding this averment to be defective, the Court said to the defendant: "It is not stated that it was a material and necessary question in the inquiry before the said Thomas Scott, to which you gave the false and corrupt answer. It may have been, therefore, consistently with the averments in this indictment, material and important for Thomas Scott in some other matter, and not in the matter stated to be in issue before

Deckard *vs.* State.

him, to have put this question, and received this answer. Now, as the offence of perjury consists in taking a false oath in a matter stated to be in judgment before a Court or person having competent authority to decide it, and as this indictment does not clearly and distinctly charge that, it does not charge the offence of perjury.'' That decision though entitled to great respect, is not a *binding* authority upon this Court, and we are unwilling to adopt it as the law of this State. To accept and apply the reasoning upon which it is founded, to the case before us, would, in our judgment, be pushing the exaction of *certainty* in indictments beyond all reasonable limits, and require them to be cumbered with constant repetitions. This indictment states what the pending inquiry was, and how it arose; that it was entered upon and *while being conducted*, the appellant appeared as a witness therein, was affirmed to give evidence in the *matter then depending*, and in answer to questions propounded to him *in the matter then and there depending before the said Judge*, made statements as to the acts and declarations of certain named parties, as it is then averred, that it *then and there became necessary and material for the said Judge* to know, whether these acts and declarations were done and made. In the face of these averments, we are asked to say there *might have been then and there* some *other matter* in which it became necessary and material, the Judge should know and be informed respecting *these same* acts and declarations. We cannot do this without disregarding the spirit if not the letter of the Statute of 23rd Geo., 2, as well as the very sensible observations of Sir MATTHEW HALE, which have received the endorsement and approval of our predecessors in the case of *State vs. Dent*, 3, *G. & J.*, 11. In our opinion, the materiality of the false testimony to the subject of the pending inquiry, is averred with sufficient distinctness and clearness.

---

Deckard *vs.* State.

---

3rd.  Another objection is that the affirmation under which the false testimony was given is, as stated in the indictment, defective.  The averment is that the appellant did before the said Judge, (who had competent authority to administer the same,) " in due form of law, solemnly and sincerely declare and affirm that the evidence that he should give in the matter depending *before the Court,* should be the truth, the whole truth, and nothing but the truth."  It is contended he should have been affirmed to give evidence in the matter depending *before the Judge.*  But in our judgment, this is a departure from the exact words of the proper affirmation, in matter not of substance, but of form merely, and does not exempt the appellant who made it from the pains of perjury, if under it he wilfully gave false testimony material in the inquiry then depending before the Judge out of Court.  Under this averment, it was admissible to prove that the affirmation actually administered was in the form in which it is insisted it should have been, or in any other form substantially the same, as for instance "in the matter now depending," without stating either " before the Court," or "before me " or "before the Judge."  In neither case would the variance be material.

What we have said in disposing of the objections above stated, appears to us to cover the entire case.  No others have been presented which require any special notice.  We have carefully examined the indictment and though we find it in some respects inartificially drawn, we are yet of opinion, looking to the whole body of it, that it contains all the essential requisites of a good and sufficient indictment for the perjury assigned.

*Ruling and judgment affirmed,*
*and cause remanded.*

(Decided 25th June, 1873.)