# Wright v. Weber.

*Practice, C. P.—Pleading—Demurrer.*

A speaking demurrer or one that sets up grounds of demurrer dehors the declaration, is bad, and will not be entertained.

A demurrer to a declaration or statement arises on its face and is never founded on matters collateral to the pleading which it opposes.

In an action of trespass to recover damages for loss occasioned by the obstruction of a road whereby plaintiff was prevented from completing a contract, if the statement avers that the obstruction continued until the defendant was enjoined by a decree of a court of equity, stating the term and number of the equity case, but not setting forth the record or stating whether the injunction was final or interlocutory, a demurrer to the statement is bad which avers that the bill in equity had been fully determined and ended, and that the plaintiff's remedy for damages, if any he had, was in the equity proceedings.

In such a case the plaintiff was not bound to set forth the record of the equity case in full, nor could the court look into that record, nor could it presume that a final decree was entered, nor could it consider as immaterial whether the decree was interlocutory or final.

It seems that in the above case the equity suit was not necessarily res adjudicata of the question of the plaintiff's damages.

In a bill for an injunction it is not absolutely and in all cases necessary for the plaintiff to show the past damages he has suffered in order to obtain the full relief which he prays. The court may award them, but only as incidental to the other relief sought, and not as in specific performance as part of, or as a substitute for that relief.

Argued April 10, 1901. Appeal, No. 91, April T., 1901, by plaintiff, from order of C. P. No. 2, Allegheny Co., July T., 1900, No. 610, sustaining demurrer in case of William J. Wright v. William Weber. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Trespass to recover damages for injuries sustained by the obstruction of a road.

Plaintiff's statement was as follows :

On or about July 2, 1898, the plaintiff was the owner of certain land, situate in the 19th ward of the city of Pittsburg, county of Allegheny, and state of Pennsylvania, being a part of lot No. 21, and the whole of lots Nos. 22, 23, 24, 25 and part of lot No. 26 in James Young's plan of record in the recorder's office in and for said county in plan book, vol. 1, page 20, together bounded and described as follows, to wit : "Beginning at the northwest corner of Luzerne (formerly Locust) Street and a 20 foot alley (said alley not shown in said plan); thence along said alley northeastwardly 225 feet 6½ inches to land now, or formerly, of Dr. Mowry's heirs ; thence .along said land North 46 deg. 42 min.; West 290.75 feet more or less to the corner of lot No. 26 in said plan ; thence by line of lots Nos. 25 and 26 South 28 deg. 18 min. West 34 feet 7½ inches to a point in the middle of the Township Road (now called Morningside Road); thence along the middle of said road by line of the property of the Allegheny Cemetery Co. South 42 deg. 10 min. West 184 feet 5 inches to said Luzerne (formerly Locust) Street; and thence along said Luzerne Street southeastwardly 328.125 feet more or less to the place of beginning, whereon was a stone quarry from which the plaintiff quarried the stone and sold the same to the public."

That prior to July 2, 1898, the plaintiff had entered into a contract with one Jacob Bender to furnish him with stone to be taken from the quarry aforesaid, and to be used by the said Jacob Bender in the erection and construction of certain houses.

The defendant, William Weber, at the time aforesaid, was in the possession of certain other lands adjoining the lands of the plaintiff, hereinbefore described, on which also was a stone quarry operated by the defendant.

That there was at the time a certain public road or street, known as the "Morningside road," leading from Penn avenue to Butler street at a point near the Allegheny river; that said Morningside road crossed the lands of the plaintiff hereinbefore described, and the lands of the defendant adjoining, and was the only road by which the plaintiff had access to the stone quarry on his said land from Penn avenue aforesaid, and that said road was necessary to the proper enjoyment of the said quarry.

That on or about July 2, 1898, the said William Weber, defendant, unlawfully closed the said road or street, by building a fence across and placing other obstructions upon the same, and threatened to do bodily injury to the plaintiff and his servants if he or they should attempt to remove such obstructions or traverse said road; that he continued so to obstruct the said road until enjoined therefrom by the court of common pleas No. 3, of Allegheny county, at No.   of August term, 1898, and that during the continuance of such obstruction the plaintiff was unable to transport and deliver to the said Jacob Bender and others the stone which he had agreed to furnish under the contract aforesaid.

That by reason of the delay, occasioned by the obstruction above mentioned, the said Jacob Bender rescinded the contract, made with the plaintiff as aforesaid, and awarded the same to the said William Weber, the plaintiff's competitor, and the defendant in this case, who furnished the stone which the plaintiff had agreed and contracted to furnish.

That by reason of the premises, and by reason of the fact that the plaintiff, during the continuance of the obstruction of the road as above stated, was deprived of the use of his men and teams, and also by reason of other consequences necessarily resulting from the unlawful acts of the defendant as aforesaid, the plaintiff has been damaged to the extent of $500, to recover which he brings this suit.

The demurrer was as follows:

It appears by the said statement or declaration that at No. 550,

August term, 1898, in the court of common pleas No. 3 of Allegheny county, Pennsylvania, the said William J. Wright filed his bill in equity against the said William Weber wherein and whereby he alleged that the said William Weber on or about July 2, 1898, unlawfully closed the road or street mentioned or described in the statement or declaration filed in this case by building a fence across and placing other obstructions upon the same, and continued so to obstruct the said road until enjoined therefrom by the said court of common pleas No. 3 of Allegheny county, at No. 550, August term, 1898. And the said plaintiff in the statement or declaration filed in the above entitled cause avers that the damages sued for in this case were sustained by him during the obstruction of the said road or street complained of as aforesaid in the aforesaid bill in equity. And the said defendant avers that the said bill in equity has been fully determined and ended, wherefore said defendant avers that for the damages, if any, sustained by the said plaintiff, as averred in his said statement or declaration, his remedy, if any, was in the equity proceeding aforesaid, and that he is estopped from maintaining an action at law to recover damages for the illegal trespass ; and the said defendant avers also that the said declaration or statement is in other respects uncertain, informal, insufficient, etc.

The court sustained the demurrer.

*Error assigned* was the order of the court.

*C. W. Reamer* and *Samuel McClay,* with them *D. M. Miller,* for appellant, cited : Allison's App., 77 Pa. 221 ; Head v. Meloney, 111 Pa. 99.

*J. S. Ferguson,* with him *E. G. Ferguson,* for appellee, cited: Allison & Evans's App., 77 Pa. 221; Head v. Meloney, 111 Pa. 99.

OPINION BY RICE, P. J., July 25, 1901:

The plaintiff alleged in his statement that he owned and operated a stone quarry and had contracted with one Bender to sell and deliver to him stone to be taken from his quarry; that the defendant owned and operated a quarry adjoining that of the

plaintiff; that the defendant closed a public road leading from the plaintiff's quarry, thereby preventing the latter from delivering stone to Bender under his contract; "that he continued so to obstruct the said road until enjoined therefrom by the court of common pleas, No. 3 of Allegheny county, at No.    of August term, 1898;" that by reason of the delay occasioned by the obstruction above mentioned Bender rescinded the contract made with the plaintiff and awarded the same to the defendant; and "that by reason of the premises, and by reason of the fact that the plaintiff, during the continuance of the obstruction of the road as above stated, was deprived of the use of his men and teams, and also by reason of other consequences necessarily resulting from the unlawful acts of the defendant as aforesaid, he has been damaged," etc.  The defendant demurred to the statement, and amongst other things, said: "And the said defendant avers that the said bill in equity has been fully determined and ended, wherefore said defendant avers that for the damages, if any, sustained by the said plaintiff, as averred in his said statement or declaration, the remedy, if any, was in the equity proceeding aforesaid, and that he is estopped from maintaining an action at law to recover damages for illegal trespass," etc.

A speaking demurrer, or one that sets up grounds of demurrer dehors the declaration is bad, and will not be entertained: 1 T. & H. Pr. sec. 582.  A demurrer to a declaration or statement arises on its face and is never founded on matters collateral to the pleading which it opposes: Wyoming County v. Bardwell, 84 Pa. 104.  Therefore, the averment that the "bill in equity has been fully ended and determined," if intended as an averment that a final decree enjoining the defendant has been entered therein, must be regarded as out of place in the demurrer.  Nor is the fact necessarily to be implied from anything averred in the statement.  The facts properly before us on the pleadings are, that the unlawful and injurious act of which the plaintiff complains in the present action was the subject-matter of his complaint in an equity suit instituted in another court and that in that suit the court issued an injunction, but whether this was interlocutory or final, and whether the equity suit was pending at the time the action was instituted, or, if ended, how it was determined, and whether the Bender

contract was rescinded, and the pecuniary damages consequent thereon had accrued, before the injunction was decreed, are all matter of fact upon which the plaintiff's statement furnishes no certain information. Nor was it necessary that it should. In other words, the averment as to the issuing of an injunction was not an essential part of the plaintiff's statement of his cause of action; his action is not upon the record in that suit; hence, neither can it be claimed, that the statement is defective because it does not set it forth fully, nor can it be asserted that the court could upon demurrer to the statement, look into that record. The plaintiff is bound by his averment, but nothing further is to be taken against him which rests on mere argument or uncertain inference. To sustain the judgment entered on the demurrer in the defendant's favor, we must either infer, that the injunction referred to in the plaintiff's statement was issued or made permanent upon final hearing, or hold, that it is immaterial whether the order or decree was interlocutory or final. We are of opinion that neither of these positions is tenable. The general rule is, that a decree or judgment to be conclusive must be final, and as we have already intimated, it is not to be presumed from anything contained in the plaintiff's statement that such decree was entered in the equity suit.

Moreover, even assuming that the decree referred to in the plaintiff's statement was entered upon final hearing, it does not necessarily follow that the question of the plaintiff's damages is res adjudicata. While it is well settled that where an injunction is granted the court may decree an account of the damages suffered (Allison and Evans's Appeal, 77 Pa. 221; Walters v. McElroy, 151 Pa. 549), yet an examination of the cases shows that the grounds upon which such damages are allowed are not the same as those upon which damages are allowed in a bill for specific performance. Where it appears that specific performance was possible at the commencement of the suit by the vendee, and whilst the action is pending the vendor, in any way, renders the remedy impracticable or inadequate, the court will not compel the plaintiff to bring a second action at law, but will do full justice by decreeing a recovery in damages. This is the only way in which the court can give the plaintiff the full relief which he claims and to which he was entitled when he brought his suit. Speaking of such a case Mr. Justice

CLARK said: "The specific performance of the contract of June 2, 1881, was the subject-matter of the suit in equity, and that subject-matter was, in its nature and by the terms of the contract, entire, and was, as we have said, within the peculiar and exclusive jurisdiction of equity. The contract covered the conveyance of the land as it existed at the time; and the suit for the specific performance of it was an action upon the contract in its entirety; if during the pendency of the proceedings, by the act of the defendant the plaintiff could not have had the full benefit of the contract, the latter was entitled to damages, as part and parcel of his claim under the bill. The question of damages did not come collaterally in question, and thus only incidentally cognizable in the equity jurisdiction, but was presented directly. The award and assessment of damages were therefore necessarily and directly involved in the decree, and if no damages were in fact awarded, we must assume that none were sustained:" Head v. Meloney, 111 Pa. 99.

In a bill for injunction it is not absolutely and in all cases necessary for the plaintiff to show the past damages he has suffered in order to obtain the full relief which he prays. The court may award them, but only as incidental to the other relief sought, and not, as in specific performance, as part of, or as a substitute for, that relief. A judgment is not evidence of any matter which comes collaterally in question, or which is incidentally cognizable or which is to be inferred by argument from it. The conclusive effect of a judicial decision cannot be extended by argument or implication to matters not actually heard and determined, nor to collateral questions which arise but do not become part of the case. The estoppel of a former adjudication will extend only so far as the subject-matter of the second suit is substantially the same as that of the first, "and may be binding on some points while leaving others open to controversy:" Schwan v. Kelly, 173 Pa. 65. In the case upon which the defendant's counsel rely (Head v. Meloney) Mr. Justice CLARK said: "It is certainly true, as stated in Tams v. Lewis, 42 Pa. 410, that a former judgment is not conclusive of anything which was not directly decided by it, or was not material to the decision. Before such effect can be given to it in another suit, it should appear either from the record or aliunde, that it must have rested on the precise ques-

tion, which it is sought again to agitate.  Whether this is so
or not may appear from the record itself, or it may be shown
by evidence not inconsistent with the record.  See, also, Duchess
of Kingston's Case, 20 State Trials, 538; Hibshman v. Dulle-
ban, 4 Watts, 183."  Whatever may be the general rule upon
the subject, we can conceive of injunction cases where the omis-
sion of the plaintiff to claim, and of the court to award, dam-
ages would not conclude him.  That this was not such a case
cannot be inferred with certainty from the mere fact that the
court awarded an injunction.  Where, upon facts disclosed by
the pleadings, an estoppel is shown, the adversary party may
take advantage of such estoppel without pleading it and with-
out making affirmative proof of the fact.  But where such es-
toppel does not appear on the face of the plaintiff's statement
and the judgment or decree of another court is set up as an es-
toppel, the whole record should be produced in order to enable
the court to construe the judgment or decree in the light of all
the grounds on which it is founded and to determine what
the issue was.  In the latter case the question cannot be de-
cided on demurrer to the statement.  Without going further
into the discussion of the question of the conclusive effect of
an injunction decree upon the question of the plaintiff's dam-
ages we conclude that the facts averred in the plaintiff's state-
ment do not, of themselves, estop him from maintaining the
present action.

The order sustaining the demurrer is reversed and set aside
at the costs of the defendant, the demurrer is overruled and the
cause is remitted to the court below to be further proceeded
with according to law.