## Piro, Appellant, *v.* Shipley.

*Res adjudicata—Equity—Injunction—Trespass—Damages.*

Where in a suit in equity to restrain a trespass of a continuing and permanent character, it appears that neither in the pleadings, nor in the evidence, nor in the decree was any mention made whatever of damages, such suit is not res adjudicata of a subsequent action of trespass to recover actual and compensatory damages for the trespass, the further continuance of which was enjoined in the equity suit. Head v. Meloney, 111 Pa. 99 and Allison's App., 77 Pa. 221, distinguished.

Argued Oct. 9, 1906.    Appeal, No. 38, Oct. T., 1906, by plaintiff, from judgment of C. P. No. 1, Phila. Co., June T., 1904, No. 1,715, for defendant non obstante veredicto in case of Pasquale Piro v. Samuel R. Shipley et al., trustees under the will of Stephen Smith, deceased.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.    Reversed.

Trespass to recover damages to real estate.    Before BIDDLE, P. J.

The opinion of the Superior Court states the case.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*J. Hibbs Buckman*, of *Hopple & Buckman*, for appellant.— Plaintiff was entitled to damages notwithstanding the equity suit: Bell's App., 81* Pa. 203; Rhea v. Forsyth, 37 Pa. 503; Allison's & Evans' App., 77 Pa. 221; Walters v. McElroy, 151 Pa. 549.

*Wm. A. Glasgow, Jr.*, with him *Roland R. Foulke*, for appellees.—The plaintiff having, in the first instance, sought relief on the equity side of the court, and that against the defendants' objection and having obtained a decree in his favor as to the jurisdiction as well as to the merits of the case, cannot now bring an action at law to recover the damages which might and should have been recovered in the equity proceeding: McGowin v. Remington, 12 Pa. 56; Allison's App., 77 Pa. 221; Walters v. McElroy, 151 Pa. 549; Head v. Meloney, 111 Pa. 99.

OPINION BY HEAD, P. J., April 15, 1907:

In May, 1903, and for some years prior thereto, the plaintiff was the owner in fee of the premises situate on the southeast corner of Ninth and Christian streets in the city of Philadelphia. In connection therewith he had an easement in the adjoining premises, owned by the defendants, entitling him, along with the owners or their tenants, to the use of a hydrant, outhouse, alleyway, etc.    On May 22, 1903, he filed a bill in equity alleging such acts done or threatened by the defendants as would

constitute a continuing and permanent trespass resulting in the destruction of his easement.   By the prayers of his bill he specially asked for an injunction to restrain the commission of any further acts of trespass and to command the restoration of the premises to their former condition and for general relief. A preliminary injunction was granted which, after final hearing, was, on June 2, 1904, made perpetual.   This decree was, on appeal, affirmed by the Supreme Court, the jurisdiction of a court of equity being upheld on the well-established grounds that the right of the plaintiff was clear and practically undisputed and that the trespass committed or threatened was of a continuing and permanent character : Piro v. Shipley, 211 Pa. 36.   The opinion of the Supreme Court was delivered March 6, 1905.

On June 26, 1904, the plaintiff began this common-law action of trespass to recover damages by reason of the facts, as he alleged, that defendants " unlawfully and maliciously tore down and demolished said privy well, deprived him of the use of the hydrant, deprived him of the use of the alleyway and said chimneys, and unlawfully, either maliciously or carelessly, or both, made excavations . . . . causing the walls of the plaintiff's house to settle and crack," to his great damage, etc.   The case went to issue on the plea of not guilty and the trial resulted in a verdict for the plaintiff.   The defendants filed a motion for a new trial which has never been formally disposed of, and, on the same day, a motion for judgment n. o. v. upon the whole record.   The court subsequently granted the latter motion and entered judgment for the defendants.   This judgment, as we learn from the brief opinion filed by the trial court and the argument presented to us at bar, proceeded on the theory that the chancellor, who heard the equity case already referred to and entered the injunctive decree, would have been warranted in assuming jurisdiction of every contention between the parties incidental to the acts which the bill directly sought to enjoin ; that he could, therefore, have ascertained and decreed to the plaintiff any damages sustained by the latter and, as a consequence, that the plaintiff is now concluded by that decree even though, in point of fact, the damages now claimed were not mentioned or adverted to in the pleadings, the evidence or the decree.   In other words, the claim of the plaintiff is met

by the plea in bar of a former recovery and judgment has been entered against him on that plea.    The correctness of that judgment is the sole question raised by the record now before us.

We may concede, at the outstart, "as a general principle, that where a court of equity has obtained jurisdiction for one purpose it may retain it generally for relief," and thus, to avoid multiplicity of actions and settle by one decree the entire controversy between the parties may properly dispose of and determine matters incidental to the main question on which its jurisdiction rests, that, in and by themselves, would furnish no basis on which such jurisdiction could be grounded.

It is to be observed we are not now called upon to determine · how far the learned chancellor who heard and disposed of the injunction bill might have lawfully extended his jurisdiction. That the decree actually entered was within the powers lawfully vested in him has been finally determined.    The precise question before us requires us to ascertain and declare whether that decree, giving to it all the conclusive effect that should be rightfully attached to it, stands as an insurmountable barrier to the plaintiff's recovery in the present action.    This involves an attentive consideration of the principles and rules laid down by our courts of last resort to guide us in assigning its proper effect to a former judgment or decree, whether it be advanced as a plea to bar, or as evidence to conclude, a plaintiff in a subsequent action.

· " The principle is well stated by Mr. Justice NELSON in Washington, etc., Steam Packet Company v. Sickles, 72 U. S. 580: ' As we understand the rule in respect to the conclusiveness of the verdict and judgment in a former trial between the same parties, where the judgment is used in pleading as a technical estoppel or is relied on by way of evidence as conclusive, per se, it must appear, by the record of the prior suit, that the particular controversy sought to be concluded was necessarily tried and determined—that is, if the record of the former trial shows that the verdict could not have been rendered without deciding the particular matter, it will be considered to have settled that matter as to all future actions between the parties ; and further, in cases in which the record itself does not show that the matter was necessarily and directly found by the jury, evidence aliunde consistent with the record may be received to prove the fact,

but even where it appears from the extrinsic evidence that the matter was properly within the issue controverted in the former suit, if it be not shown that the verdict and judgment necessarily involved its consideration and determination, it will not be conclusive.' " Per SHARSWOOD, J., in Coleman's Appeal, 62 Pa. 252.

" If the same question be the material matter in issue now that was determined in the equity suit against the defendants, it must be admitted that it was concluded by the decree in equity—and cannot be controverted by the parties thereto. But as this is an estoppel by matter of record, we must look to see what the record says, what it was that the plaintiffs claimed by their bill. . . . I do claim, that to be conclusive, the record must show the very matter claimed to have been passed upon, which is claimed to be concluded. That does not appear here. ' In order that a judgment in one action shall be conclusive in another, it must appear with convenient certainty, that the question in controversy in the second suit, was litigated and decided in the first.' 2 Smith Lead. Cas, 5th Am. ed. 668." Per THOMPSON, C. J., in Williams v. Row, 62 Pa. 118.

In Wright v. Weber, 17 Pa. Superior Ct. 451, president judge RICE uses the following language that seems to precisely fit the point now under consideration: " In a bill for injunction it is not absolutely and in all cases necessary for the plaintiff to show the past damages he has suffered in order to obtain the full relief which he prays. The court may award them, but only as incidental to the other relief sought, and not, as in specific performance, as part of, or as a substitute for, that relief. A judgment is not evidence of any matter which comes collaterally in question, or which is incidentally cognizable or which is to be inferred by argument from it. The conclusive effect of a judicial decision cannot be extended by argument or implication to matters not actually heard and determined, nor to collateral questions which arise but do not become part of the case. The estoppel of a former adjudication will extend only so far as the subject-matter of the second suit is substantially the same as that of the first ' and may be binding on some points while leaving others open to controversy : ' Schwan v. Kelly, 173 Pa. 65." Finally, in the very

recent case of Jackson v. Thomson, 215 Pa. 209, Mr. Justice MESTREZAT, after citing with approval some of the above authorities and many others in harmony with them, quotes and adopts the following statement of the rule: " What is meant by the same cause of action is, where the same evidence will support both actions, although the actions may happen to be grounded on different writs ; this is the test to know whether a final determination in a former action is a bar, or not, to a subsequent action."

Looking then at the bill, the evidence and the decree in the equity case, through the clarifying medium of these authoritative rules, how can it be said that the plaintiff is estopped by that record from prosecuting the present action wherein he seeks to recover actual, compensatory damages for a naked tort, a trespass alleged to have been committed willfully and maliciously? The bill was not aimed at the recovery of damages and makes no mention of them ; its main, if not its sole, purpose was to invoke the aid of the strong arm of a chancellor to prevent a threatened destruction of the plaintiff's easement and to maintain or restore the status quo ante. Its averments were confined to such matters as tended to show a chancellor's jurisdiction and to move his conscience to action. They displayed no foundation for the introduction of evidence of the money value of the injuries already sustained, much less of those which accrued, or at least became manifest only after the bill was filed. The evidence nowhere invited the court to consider the question of damages or furnished any standard by which they could be measured. The decree, following the averments of the bill and the supporting evidence, was limited to the injunctive relief prayed for. The whole record clearly shows that the plaintiff's right to recover the damages now sued for, was never litigated, never passed on, and never decided ; and, further, that such consideration or decision was in nowise essential to the integrity of the decree actually entered. Logically, therefore, applying the doctrine of the cases cited to the question before us, we must hold that the record and decree in the equity case ought not and cannot be held to bar the plaintiff's right in the present action.

The learned trial court we think fell into error in assuming that he was obliged to enter judgment for the defendants

on the authority of Head v. Meloney, 111 Pa. 99. That case we believe to be plainly distinguishable from the one at bar. The sole purpose of the equity proceeding there considered was the specific performance of a contract to convey certain real estate. Unless that identical real estate, as it existed when the bill was filed, or its equivalent, could be given to the plaintiff, the object of his bill would be frustrated, the relief he prayed for could not be afforded. The decree directing the conveyance as prayed for was a distinct affirmation that his right to the relief sought had been established and was given and intended to be given by the decree. Manifestly, therefore, if, by the time the decree was entered, the property had been so despoiled by the defendant or one claiming under him with notice, that its conveyance did not in fact furnish full relief as it was intended and appeared to do, it was the duty of the plaintiff to lay before the court such facts as would enable the court to so modify the decree as to make it adequate.

Having accepted without complaint or appeal a decree which was intended to, and upon its face did, give him full relief, he could not be permitted, in a subsequent action at law, to assert that his decree was not complete and should be pieced out by a recovery in damages. This would amount to a collateral attack on the decree, with the idea of having it reformed by another court of no higher jurisdiction.

The following language from the opinion of Mr. Justice CLARK we think recognizes the distinction we have sought to draw : " The contract covered the conveyance of the land as it existed at the time, and the suit for the specific performance of it was an action upon the contract in its entirety ; if during the pendency of the proceeding, by the act of the defendant, the plaintiff could not have the full benefit of the contract, the latter was entitled to damages, as part and parcel of his claim under his bill. The question of damages did not come collaterally in question, and thus only incidentally cognizable in the equity jurisdiction, but was presented directly. The award and assessment of damages were, therefore, necessarily and directly involved in the decree, and if no damages were in fact awarded, we must assume that none were sustained."

Nor do we regard the case of Allison's Appeal, 77 Pa. 221,

as in any way conflicting with the conclusion here reached. There the bill not only averred an invasion of the plaintiff's property, but the taking away of a large amount of oil therefrom, which amounted to a waste and destruction of his estate. There was a specific prayer for an account of this waste. It was held that inasmuch as the jurisdiction in equity had properly attached to prevent a continuing trespass and stay waste, it could be rightfully extended to the taking of an account for the oil removed, to the end that the full relief prayed for could be administered in a single proceeding. The utmost that could be fairly predicated of that case, as applied to the question we are now considering, would be to say that if, by his original or a supplemental bill, the present plaintiff had prayed for an account of the damages he had sustained, the equity court might have properly undertaken to ascertain and assess them. We are not to be understood, however, as holding that, in every case, where, without color of right, a continuing trespass is being committed or threatened, a plaintiff seeking simply injunctive relief may, or must, include in his bill a prayer for an account of his damages. No such question is before us.

A number of questions concerning the proper measure of damages were raised by the points submitted to the court below by the learned counsel for the defendants, but none of these questions are raised by the present appeal and the single assignment of error contained in the record. What disposition will be made of the motion for a new trial, if pressed before the court in banc, we cannot undertake to determine. It may well be that, in the light of the verdict, after the settlement of the main question of the plaintiff's right to recover notwithstanding the former decree, no further litigation will be required.

The judgment is reversed and a procedendo awarded, the cost of this appeal to be paid by the appellees.