MOSES GRUNBERG & others *vs.* ISRAEL LOUISON.

Bristol.    December 4, 1961. — March 8, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& SPIEGEL, JJ.

*Res Judicata.    Equity Pleading and Practice,* Costs, Suit for specific per-
formance, Parties.    *Equity Jurisdiction,* Vexatious litigation.

A final decree in a suit in equity against officers and directors of a religious
society enforcing an award of arbitrators one and one half years pre-
viously to the effect that the plaintiff was a member of the society in
good standing and enjoining the defendants from interfering with his
rights and privileges as a member, but not allowing the plaintiff any
damages or costs although the bill contained a prayer for "damages
. . . for all loss, cost, and expenses occasioned by the repeated, wrongful,
and unwarranted failure and refusal by the defendants . . . to recog-
nize and accept the plaintiff as a member" of the society, barred recov-
ery, in a tort action subsequently brought by the plaintiff against the
defendants, of damages for "humiliation, loss of reputation [and] dis-
tress of mind" resulting from failure of the defendants to abide by the
arbitration award [733–735]; and also barred in that action recovery by
the plaintiff of counsel fees and expenses incurred since the award.
[735–736]
Noncompliance by the defendants in a suit in equity, officers and directors
of a religious society who had agreed with the plaintiff to submit to
arbitrators all matters in controversy between them, with a final decree
in the suit enforcing an award of the arbitrators in the plaintiff's favor
was not shown to have created a new cause of action under the arbitra-
tion agreement.    [736]
Where it appeared in a suit in equity by officers, directors, and members
of a religious society against one of its members that, after it had been
established in an arbitration that the defendant had been improperly
expelled from the society and was still a member thereof, he had brought
two suits in equity to vindicate his right to membership, the first of which
was dismissed and the second of which ended with a final decree grant-
ing him the relief sought, that he also had brought an action against
officers, directors, and members of the society for damages which this
court had decided was barred by the arbitration award, and a later ac-
tion, still pending, against officers and directors of the society for dam-
ages for their alleged failure to abide by the award, that the cause in
the pending action was res judicata by reason of the decree in the sec-
ond suit in equity brought by him, and that he had an intent to harass
the plaintiffs, the final decree in the present suit properly enjoined him
from prosecuting the pending action and from beginning "any action

arising out of the controversy" "other than proceedings in contempt for any alleged failure to comply with the final decree" in the second suit in equity brought by him.   [736–737]

Overruling of a demurrer in an action at law was irrelevant to the merits of a subsequent suit in equity to enjoin prosecution of the action as vexatious litigation.   [737]

Failure, of plaintiffs in a suit in equity brought to enjoin vexatious litigation by the defendant, to comply promptly with the final decree in a suit in equity previously brought by the defendant against them did not preclude issuance of an injunction in their favor in their suit.   [737]

In a suit in equity by officers of a religious society to enjoin vexatious litigation by the defendant, relief to the plaintiffs by way of an injunction was not precluded by the fact that some of the plaintiffs had not been parties to the litigation brought by the defendant where it appeared that such plaintiffs were officers of the society at the time of the hearing of the suit.   [737–738]

BILL IN EQUITY, filed in the Superior Court on September 7, 1960.

The suit was heard by *Lurie, J.*

*Melvin S. Louison,* for the defendant.

*Talbot T. Tweedy,* (*Edward Cooperstein* with him,) for the plaintiffs.

WHITTEMORE, J.   The final decree in the Superior Court enjoined the defendant from prosecuting a law action, No. 11,359, in the Superior Court for Bristol County, and from beginning "any action arising out of the controversy which is the subject of *Louison* v. *Fischman* . . . [341 Mass. 309] other than proceedings in contempt for any alleged failure to comply with the final decree in Equity 5077."

The controversy began in 1955 when Louison was removed as president of Congregation Agudath Achim, Inc., a religious society in Taunton.   Louison in May, 1955, brought a bill in equity for restoration to the office of president.   In August, 1955, the parties agreed to arbitration of the whole matter in dispute, and the bill in equity was thereupon dismissed.

The award, on December 6, 1955, found that Louison had been legally and properly temporarily removed as president by a meeting of the Congregation, and that a properly constituted Rabbinic Court, with power, had effectively removed Louison as president of the Congregation.   It found

that Louison had abused his presidential discretion and had gone beyond the dignity and decorum of his office in disputing his rights with the rabbi. It found also that a meeting called to expel Louison as a member had been legally held but the charges were of indiscretions as president or lack or abuse of discretion in that office and did not specifically deal with moral character so that the vote was ineffective and Louison was still a member in good standing of the Congregation. The arbitrators determined that the directors had found Louison guilty of various charges without right and without giving him an opportunity to be heard. The award ordered that Louison and the other individuals pay their own counsel and shares of the expenses and that the Congregation not be assessed.

Louison thereafter brought two bills in equity (Bristol Nos. 4955 and 5077) to vindicate his right to membership and two actions at law (Bristol Nos. 8125 and 11,359) for damages from the acts of officers and members of the Congregation which gave rise to or which were done in the course of the controversy. Defendants in those cases are included among the plaintiffs herein.

The judge in the present suit ruled that the prior proceedings (No. 5077 and No. 8125) barred Louison's attempt to recover damages in the second law action, No. 11,359.

Action No. 11,359, ad damnum $50,000, was begun by writ dated June 29, 1959, and is in contract or tort. The damages which Louison claims in three counts are alleged to have resulted from the failure of the defendants (allegedly parties to the arbitration agreement or their privies), as officers and directors of the Congregation, to abide by the award and Louison's need to engage an attorney to secure injunctive relief in support of the award, as well as from the continued refusal of the defendants to abide by the award and by the decree of July 1, 1957, in No. 5077. The allegation is that this refusal extended after July and until November, 1957, when the Supreme Judicial Court denied a petition for a stay of the injunction. Counts 2 and 3 aver wilful and malicious use of the positions of the defendants

as officers and directors to prevent the Congregation from carrying out the award. The damages claimed are ''humiliation, loss of reputation [and] distress of mind,'' together with inconvenience and loss of time and the expenses of litigation.

The first suit in equity was brought April 17, 1956, was heard on the merits, and was dismissed on July 13, 1956. It prayed *inter alia* for damages for ''all loss, cost and expenses . . ..'' The judge found that since the award Louison had gone to the temple only once and, seeing one of the defendants presiding, had left within a few moments; that Louison explained: ''I was expelled and I wouldn't go . . . where I was not wanted''; and that the weight of the evidence was that the defendants had done nothing in respect of Louison's membership rights.

The bill in the second suit, No. 5077, was filed November 26, 1956. Another judge, on May 28, 1957, found that on July 18, 1956, Louison had in writing to the president, treasurer, and secretary requested a bill for dues and had received no reply and that his check to the Congregation sent on August 14, 1956, had been returned. The judge's conclusion was that Louison's name had in effect been struck from the rolls and that he was not recognized or treated as a member, and he ruled ''that the decision of the Board of Arbitration with respect to the plaintiff's membership in the Congregation should be enforced.'' The final decree of July 1, 1957, enjoined interference with Louison's rights and privileges as a member of the Congregation except as to post decree acts or conduct. It awarded no damages or costs. There was, nevertheless, a prayer in the bill that ''damages be assessed . . . for all loss, cost, and expenses occasioned by the repeated, wrongful, and unwarranted failure and refusal by the defendants, individually and collectively to recognize and accept the plaintiff as a member of the Congregation Agudath Achim.''

The first law action, No. 8125, was in tort and stated an ad damnum of $600,000. The writ was dated May 10, 1957,

and the case was entered on July 1, 1957. It is the subject of our opinion in *Louison* v. *Fischman,* 341 Mass. 309. The first trial of that action, in September, 1958, was abortive; the trial judge found the declaration unclear in view of Louison's indication, in colloquy, that he was "bringing suit on the award" and not merely on the expulsion. The judge declared a mistrial, with leave to amend. At the subsequent trial on an amended declaration based on expulsion, the judge struck all testimony of events prior to the award and of matters determined or which could have been determined by the award. The plaintiff offered to prove that after the award he was not recognized as a member and that he had brought suit No. 5077 "seeking specific performance of the award." He offered to prove "all the facts pleaded" and to "show damages as alleged in the declaration." We overruled the plaintiff's exceptions and held right the judge's ruling that the plea of res judicata based on the arbitration award had been sustained.

1. The declaration in No. 11,359 does not assert any claim for damages caused by Louison's expulsion. Our holding, 341 Mass. 309, 314, disposed of the issue of expulsion in its determination that the right to such damages was adjudicated in the arbitration proceedings.

2. The suit which, prior to No. 11,359, adjudicated rights under the arbitration contract and the award was No. 5077. We consider first the effect of that suit on Louison's claim in No. 11,359 for "humiliation, loss of reputation [and] distress of mind" resulting from failure to abide by the award.

Louison in No. 5077 sought, in effect, specific performance of the award. *Jones* v. *Boston Mill Corp.* 4 Pick. 507. *Louison* v. *Fischman,* 341 Mass. 309, 313–314. Louison's present contention to the contrary, based on the negative terms of the injunction, is met by the assertion of his counsel, noted above, in the trial of No. 8125 that in No. 5077 he was "seeking specific performance."[1] The judge ex-

[1] The fourth prayer was for "a permanent injunction . . . that the plaintiff be recognized as a member . . . and that the defendants . . . be enjoined from interfering with the rights and privileges of the plaintiff as a member . . . ."

pressly ruled that the decision of the arbitrators "should be enforced." An integral part of the cause of action was the right to monetary compensation for the inability of the decree to restore Louison's membership as of the date of the award, that is, the right to the damages caused by the nonrecognition. *Canning* v. *Shippee,* 246 Mass. 338. Hence, if Louison suffered hurt to his reputation and mental distress in the interval because of failure of the defendants to comply with the award, he was bound to allege and prove such damage in that suit. *Ibid.* See *Sandler* v. *Silk,* 292 Mass. 493, 498; *State Realty Co. of Boston, Inc.* v. *MacNeil Bros. Co.* 334 Mass. 294, 300; *Dunn* v. *McSweeney,* 338 Mass. 270, 273; *Regis* v. *H. A. Jaynes & Co.* 191 Mass. 245, 246–247; *Summerfield Co. of Boston* v. *Prime Furniture Co.* 242 Mass. 149, 153–154; *Piro* v. *Shipley,* 33 Pa. Super. 278, 284; Freeman, Judgments § 593; Anno. 26 A. L. R. 2d 446, 449. See also (prior actions at law) *Dearden* v. *Hey,* 304 Mass. 659, 661–662; *Siegel* v. *Knott,* 318 Mass. 257, 262; *Ratner* v. *Rockwood Sprinkler Co.* 340 Mass. 773, 776. For the right to damages for mental suffering in certain contract actions, see *McClean* v. *University Club,* 327 Mass. 68, 76; McCormick on Damages, § 145.

The bill recognizes the obligation to claim damage suffered. Louison may not take advantage of the omission of the bill to make express, among the items of damage alleged, a claim for the alleged intangible hurts.[1] See *Mackintosh* v. *Chambers,* 285 Mass. 594, 596–597. An inference that the judge may have declined to consider the issue of damages on purely discretionary grounds is not open where the right to damages is so closely related to the main, equitable cause of action, and an item for damages is included in the bill.[2]

---

[1] That Louison had such items of damage in mind for a time before the decree in No. 5077 was entered on July 1, 1957, is shown by entry of law action No. 8125 on that date with a declaration which included extensive averments of injury to reputation and mental distress.

[2] In the recent case of *Codman* v. *Wills,* 331 Mass. 154, 159, it was held, in accordance with the well recognized rule, that equity, having jurisdiction to enjoin trespass, "*may* [emphasis supplied] properly, in order to do complete justice . . . also award damages for the injury done." The award of damages in that case was, it appeared, dealt with as in lieu of *any* order for

The counts in No. 11,359 which sound in tort present no wrong other than that sued on in No. 5077. See *McClean* v. *University Club,* 327 Mass. 68, 76.

We conclude that the claim for hurt to reputation and mental distress is barred by the final decree in No. 5077.

3. Louison's asserted right to recover, in No. 11,359, the counsel fees and expenses incurred in the post award litigation is also barred by the principle of *Canning* v. *Shippee, supra.*

The decision in *Goldberg* v. *Curhan,* 332 Mass. 310, 312, would bar such recovery in No. 5077 unless the case is to be deemed "exceptional" and hence within the rule of *Malloy* v. *Carroll,* 287 Mass. 376, 384–385. That case is, to a degree, similar to No. 5077. The final decree therein enjoined the defendants from interfering with the rights of the plaintiffs as members of a labor union. The damages for wrongful exclusion included counsel fees.

Whatever the effect of the *Goldberg* case, it is plain, under *Canning* v. *Shippee,* that the only suit in which the counsel fees and expenses of a suit for specific performance can be awarded is that suit. If recoverable, they are elements of the damage claim which that decision holds can be asserted only in the equity suit. An inspection of the record in the *Canning* case discloses that the declaration which was held bad on demurrer averred, as one element of damages, the attorney's fees and expenses incurred in connection with the prior suit for specific performance.

The *Goldberg* case is not concerned with the extent of the right to recover counsel fees and expenses in a later proceeding. Read with the *Malloy* case it may mean that such elements of damage are not recoverable in most cases. The opinion in the *Malloy* case (287 Mass. 376, 385–386) emphasizes the character of the wrong and states that the circumstance of when the claim for counsel fees and expenses is presented is not determinative. We do not rule as to the

restoration of the property to its prior state (see p. 154) and the rule there exemplified is not in conflict with that of *Canning* v. *Shippee, supra,* text. For the discretionary rule when equitable relief fails, see *Newburyport Inst. for Sav.* v. *Puffer,* 201 Mass. 41, 46–49, and cases cited. See also G. L. c. 214, § 1A.

applicability of the *Malloy* case to No. 5077, inasmuch as the issue is concluded against Louison by the final decree in that suit without an award of such damages. In the light of the *Canning* and *Malloy* cases it was incumbent upon Louison to raise the issue in No. 5077 for final determination therein, on appeal if necessary.

4. Failure to comply with a decree is primarily of court concern, and contempt proceedings afford a remedy to the aggrieved party. *Eliopoulous* v. *Makros,* 322 Mass. 485, 489–490. A fine may be levied in a civil contempt proceeding payable to the plaintiff which will be ''compensatory or remedial'' (*Commonwealth* v. *Hudson,* 315 Mass. 335, 346) and ''may be designed to reimburse the plaintiff not only for the taxable costs of suit but also for expenses of counsel fees and other disbursements in enforcing his rights.'' *Root* v. *MacDonald,* 260 Mass. 344, 362. *New York Cent. R.R.* v. *Ayer,* 253 Mass. 122, 127. We need not determine whether in some circumstances a plaintiff may in proceedings other than a petition for contempt recover damages for failure to comply with a decree. Louison's declaration shows no special damage resulting therefrom. No new cause of action under the arbitration contract arose because of noncompliance after the decree.

5. Although '' [o]rdinarily a suit in equity will not lie to restrain a pending action at law to which there is a perfect defence'' (*Nichinson* v. *Limon,* 312 Mass. 467, 471), equity will act to enjoin a pending action where it is shown to be part of a scheme of harassment and constitutes vexatious litigation. *Steinberg* v. *McKay,* 295 Mass. 139, 143. *Potter Press* v. *C. W. Potter, Inc.* 303 Mass. 485, 494. *Boyajian* v. *Hart,* 312 Mass. 264, 266. *Smith* v. *Board of Appeals of Plymouth,* 340 Mass. 230, 233. *State Realty Co. of Boston, Inc.* v. *MacNeil,* 341 Mass. 123.

Louison has not brought groundless actions insupportable on any legal theory. Compare the *Steinberg* case, *supra.* Nevertheless, an injunction is in order. It was open to the judge to conclude from evidence of remarks by Louison early in the controversy that Louison had an in-

tent to harass the plaintiffs for a long time. Cumulatively, the bringing of the four post award suits has had that effect.

This suit has afforded an appropriate opportunity to determine legal issues which it now appears would be a full defence in law to action No. 11,359. Louison's course, after the order for decree in No. 5077 which vindicated his membership rights, in entering in July, 1957, and prosecuting action No. 8125 against thirty officers, directors, and members of the Congregation and in bringing in 1959 No. 11,359 against seventeen officers and directors, justifies the inference of his concern with litigation rather than redress. It was a course tending to prevent establishment of the harmonious intercourse which would give substance to the restored membership in the Congregation, which he had sought and obtained in No. 5077. Furthermore, in view of the ameliorating effect of the award and decree on the mental distress and hurt to reputation incident to the controversy, the prospect of substantial recovery for these items in the second law action was not great, even if not barred by No. 5077.

The conclusion is justified that, if legal theory could be found to give apparent support to a new action for damages for acts related to the controversy, there would be a substantial risk that such action, if not enjoined, would be brought. Law action No. 8125 and equity suit No. 5077 have given adequate opportunity for presentation of such grievances. Deep emotions have been aroused by the controversy. It is appropriate to end it conclusively by injunctive relief.

That a demurrer was overruled in No. 11,359 is irrelevant. The failure of the plaintiffs to comply promptly with the decree in No. 5077 does not prevent an injunction in this suit.

Louison directs attention to nine plaintiffs who have never been parties to any of the cases brought by Louison. But the evidence shows that they were included among the group of officers at the time of the hearing of this case, and they are entitled to the protection of the decree. *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. 1, 14. *Shaw* v.

*Harding,* 306 Mass. 441, 449. Although not in terms bound by the injunction in No. 5077, they stand in their official positions in privity with the officers and directors who are so bound, and no attempt to circumvent the effect of the decree in No. 5077 should be expected or is to be countenanced.

Louison contends that the injunction is too broad, but he shows no way in which except, as to membership in the Congregation, he has any present rights under the arbitration award or the contract for arbitration. Louison refers to the contractual relationship between him and the Congregation under its by-laws. We see no basis for suggesting that the injunction deprives Louison of rights thereunder.

*Final decree affirmed.*