William Morningstar, Appellant, *v.* The Lafayette Hotel Company, Respondent.

Innkeepers — not required to entertain guests who have refused to pay a lawful charge — action against hotelkeeper for refusal to serve guest — evidence — erroneous admission of testimony to show bad reputation of plaintiff, as a guest of a hotel.

1. An innkeeper is not required to entertain a guest who has refused to pay a lawful charge. Whether under the circumstances the charge in controversy in the case at bar was so excessive as to justify refusal to pay on the part of the guest was a question for the jury.

2. In an action brought to recover damages against a hotelkeeper for refusal to serve plaintiff as a guest, on the ground that he had theretofore refused to pay a bill presented to and disputed by him, he offered no evidence as to injury to his reputation. *Held,* error to allow evidence to be given by defendant to the effect that other hotelkeepers regarded plaintiff as a chronic faultfinder and that his reputation was bad as the guest of a hotel.

*Morningstar* v. *Lafayette Hotel Co.,* 149 App. Div. 934, reversed.

(Submitted May 1, 1914; decided June 2, 1914.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 11, 1912, affirming a judgment in favor of defendant entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Stephen V. O'Gorman* and *John T. Ryan* for appellant. Plaintiff being a guest of the defendant, it was bound to serve him with meals in its café as long as that relation continued, and the court erred in refusing to so rule when requested. (*Krohn* v. *Sweeney,* 2 Daly, 200; Beale on Innkeepers, §§ 16, 121, 169, 172; *Johnson* v. *C. F. Co.,* 80 Minn. 310; *Wintermute* v. *Clark,* 5 Sandf. 242; *Kaplan* v. *Titus,* 140 App. Div. 416; *Luchea* v.

*Omel*, 46 App. Div. 200.)  The court erred in permitting witnesses to testify to the reputation of plaintiff in a hotel in the city of Buffalo over the objection and exception of plaintiff's counsel.  (*Holmes* v. *Jones*, ·147 N. Y. 58; *Hart* v. *McLaughlin*, 51 App. Div. 411; *Williams* v. *United States*. 168 U. S. 382; *Bird* v. *Halsey*, 87 Fed. Rep. 671; *State* v. *Clifton*, 30 La. Ann. 951; *People* v. *Markham*, 64 Cal. 157.)

*Robert F. Schelling* and *Edward J. Garono* for respondent.   Defendant, on plaintiff's refusal to pay, had the right to refuse further service, and it did not waive this right by not ejecting plaintiff from its hotel. (Beale on Innkeepers, 104.)  The evidence of defendant's witnesses as to plaintiff's reputation as a guest of hotels is competent.   (*Osterheld* v. *Star Co.*, 146 App. Div. 389; *Young* v. *Johnson*, 46 Hun, 168; 123 N. Y. 226; *Allen* v. *Besecker*, 55 Misc. Rep. 366; *Smith* v. *Mathews*, 21 Misc. Rep. 150; *Ford* v. *Jones*, 62 Barb. 489; *Vedder* v..*Fellows*, 20 N. Y. 126; 2 Wigmore on Ev. 1616; *Keener* v. *State*, 18 Ga. 221; *Thomas* v. *People*, 67 N. Y. 218.)

CARDOZO, J.   The plaintiff was a guest at the Lafayette Hotel in the city of Buffalo.   He seems to have wearied of the hotel fare, and his yearning for variety has provoked this lawsuit.   He went forth and purchased some spareribs, which he presented to the hotel chef with a request that they be cooked for him and brought to his room.   This was done, but with the welcome viands there came the unwelcome addition of a bill or check for $1, which he was asked to sign.   He refused to do so, claiming that the charge was excessive.   That evening he dined at the café, and was again asked to sign for the extra service, and again declined.   The following morning, Sunday, when he presented himself at the breakfast table, he was told that he would not be served.   This announcement was made publicly, in the hearing of

other guests.   He remained at the hotel till Tuesday, taking his meals elsewhere, and he then left.   The trial judge left it to the jury to say whether the charge was a reasonable one, instructing them that if it was, the defendant had a right to refuse to serve the plaintiff further, and that if it was not, the refusal was wrongful. In this, there was no error.   An innkeeper is not required to entertain a guest who has refused to pay a lawful charge.   Whether the charge in controversy was excessive, was a question for the jury.

The plaintiff says, however, that there was error in the admission of evidence which vitiates the verdict.   In this we think that he is right.   He alleged in his complaint that the defendant's conduct had injured his reputation. He offered no proof on that head, but the defendant took advantage of the averment to prove what the plaintiff's reputation was.   A number of hotel proprietors were called as witnesses by the defendant, and under objection were allowed to prove that, in their respective hotels, the plaintiff's reputation was that of a chronic faultfinder. Some of them were permitted to say that the plaintiff was known as a "kicker."   Others were permitted to say that his reputation was bad, not in respect of any moral qualities, but as the guest of a hotel.   The trial judge charged the jury that they must find for the defendant if they concluded that the plaintiff had suffered no damage, and this evidence was received to show that he had suffered none.

It is impossible to justify the ruling.   The plaintiff, if wrongfully ejected from the café, was entitled to recover damages for injury to his feelings as a result of the humiliation (*Aaron* v. *Ward*, 203 N. Y. 351; *Gillespie* v. *B. H. R. R. Co.*, 178 N. Y. 347); but his reputation as a faultfinder was certainly not at issue.   The damages recoverable for such a wrong were no less because the occupants of other hotels were of the opinion that he complained too freely.   In substance, it has been held that

the plaintiff might be refused damages for the insult of being put out of a public dining room because other innkeepers considered him an undesirable guest.

It is no concern of ours that the controversy at the root of this lawsuit may seem to be trivial. That fact supplies, indeed, the greater reason why the jury should not have been misled into the belief that justice might therefore be denied to the suitor. To enforce one's rights when they are violated is never a legal wrong, and may often be a moral duty. It happens in many instances that the violation passes with no effort to redress it — sometimes from praiseworthy forbearance, sometimes from weakness, sometimes from mere inertia. But the law, which creates a right, can certainly not concede that an insistence upon its enforcement is evidence of a wrong. A great jurist, Rudolf von Ihering, in his "Struggle for Law," ascribes the development of law itself to the persistence in human nature of the impulse to resent aggression, and maintains the thesis that the individual owes the duty to himself and to society never to permit a legal right to be wantonly infringed. There has been criticism of Ihering's view, due largely, it may be, to the failure to take note of the limitations that accompany it, but it has at least its germ of truth. The plaintiff chose to resist a wrong which, if it may seem trivial to some, must have seemed substantial to him; and his readiness to stand upon his rights should not have been proved to his disparagement.

The judgment must be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, CHASE, CUDDEBACK and MILLER, JJ., concur.

Judgment reversed, etc.