ANNIE BURKE *vs.* JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY.

Suffolk. December 12, 1934. — March 28, 1935.

Present: RUGG, C.J., CROSBY, FIELD, & LUMMUS, JJ.

*Insurance,* Life: reinstatement, proof of death. *Evidence,* Presumptions and burden of proof, Physician's certificate, Hospital record. *Practice, Civil,* Ordering verdict. *Words,* "Dispensary," "Hospital," "Liability."

At the trial of an action upon a policy of life insurance which had lapsed, the burden was on the plaintiff to prove that it had been reinstated and to prove the truth of certain statements made by the insured to the insurance company in his application for reinstatement, the truth of which statements was a condition precedent to the reinstatement.

Where there is evidence to support the burden of proof at the trial of an action, and no contrary evidence conclusively binding upon the party having that burden, a verdict cannot properly be ordered for the opposing party no matter how great the preponderance of the evidence in his favor.

At the trial of an action upon a policy of life insurance, statements by a physician, which were answers to questions on a blank form provided by the insurance company and which accompanied and were made part of the proof of death of the insured furnished by the plaintiff to the company, but which were not sworn to nor accepted as true by the plaintiff, were admissible in evidence against the plaintiff, but were not conclusively binding upon him and might be contradicted by him.

A dispensary existing under G. L. (Ter. Ed.) c. 111, §§ 50–57, is not required to keep records by § 70, and therefore records kept by it are not admissible in evidence under G. L. (Ter. Ed.) c. 233, § 79.

Where, at the trial of an action upon a policy of life insurance, the defendant's liability depended on the truth or falsity of statements made by the insured to the defendant in applying for reinstatement of the policy after it had lapsed, to the effect that since the lapse he had been in good health, had not had any injury or illness, and had not consulted a physician, records of a hospital showing that the insured had received medical treatment there during that period were not inadmissible on the ground that they were introduced only on "the question of liability" within the meaning of those words in G. L. (Ter. Ed.) c. 233, § 79.

CONTRACT. Writ, as amended, dated February 10, 1931.
The action was tried in the Superior Court before *Williams,* J., who ordered a verdict for the defendant. The

plaintiff alleged exceptions. Material evidence is stated in the opinion.

*W. J. Killion,* (*M. J. Lee* with him,) for the plaintiff.

*W. P. Kelley,* for the defendant.

CROSBY, J. This is an action of contract brought by the widow and beneficiary of John P. Burke against the defendant, as insurer of his life. It is recited in the bill of exceptions, in substance, that the policy is a "life policy maturing at death" and is in the sum of $1,500 payable at death to Annie Burke, wife of the insured, upon proof of death and surrender of the policy.

It is alleged in the plaintiff's declaration that the defendant insured the life of her husband in the sum of $1,500; that the policy was effective from September 13, 1928; that all premiums on the policy have been paid; that the insured died on or about December 20, 1930; that the plaintiff is the beneficiary named in the policy; and that the plaintiff has given notice and proofs of death to the defendant. The defendant's answer in addition to a general denial recites that the policy lapsed for nonpayment of premium due and payable September 13, 1930; that on October 25, 1930, the insured signed and delivered to the defendant a certificate of insurability applying for reinstatement of the policy; and that in the certificate the insured requested the defendant to reinstate the policy, "which under its terms is now lapsed," upon condition of the truth of certain statements set forth in the certificate, including the following: "I hereby certify that I am now in good health and that during the time, including the grace period, since the premium now in default became due, I have had no injury, ailment, illness or disease, nor symptoms of such, neither have I consulted a physician, except as noted below." It is further recited in the defendant's answer that these statements by the insured were not true, as at the time of signing the certificate he was suffering from aortic regurgitation and myocardial failure, from which he died on December 20, 1930, and also as he had consulted physicians during the time since the premium in default became due; and that because of the insured's failure to comply with

the conditions precedent in the certificate the lapsed policy was not revived or restored, but remained void.

At the close of the evidence the defendant presented a motion for a directed verdict, which was allowed subject to the plaintiff's exception. The case is before this court on the plaintiff's exceptions to the admission in evidence of certain hospital records and Exhibits 3 and 4, to the reading to the jury of Exhibits 2 and 3, and to the allowance of the defendant's motion for a directed verdict.

It was agreed by the parties that the premiums were paid to September, 1930. The plaintiff testified that her husband was in good health from September 13 (the premium default date) up to and including October 25, 1930, when he signed the certificate for reinstatement. She denied that he had received any medical treatment during the period in question. The defendant introduced in evidence certain records of the Boston Dispensary, proof of death of the plaintiff's husband (Exhibit 2), a statement of Dr. McQuiggan accompanying the proof of death (Exhibit 3), and another certificate by Dr. McQuiggan (Exhibit 4) also accompanying the proof of death and by the express terms of the latter document made a part of it. The material parts of the certificate of insurability also introduced are reproduced in the record. A witness called by the defendant, custodian of certain records of the dispensary, read in evidence portions of these records tending to show that the insured had received medical treatment, contrary to his statements in the certificate of insurability. The statements of Dr. McQuiggan also indicate that the insured had been ill and had received medical treatment within the period in question, contrary to his statements.

No contention is made that the policy had not lapsed. See *Baraca* v. *Metropolitan Life Ins. Co.* 257 Mass. 538, 540–541. The only question is whether the policy had been reinstated. The burden rests upon the plaintiff to prove such reinstatement, and to prove the truth of the statements in the certificate which was a condition precedent to reinstatement. *Kukuruza* v. *John Hancock Mutual Life Ins. Co.* 276 Mass. 146, 150–152. The evidence was in

conflict whether the insured was in good health, and whether he had consulted a physician. The plaintiff having testified to the truth of the statements in the certificate of insurability, it cannot be said that there was no evidence to support the burden of proof that rested upon her. Unless, therefore, there is evidence to the contrary by which the plaintiff is conclusively bound, a verdict could not properly have been directed for the defendant. *Salem Trust Co.* v. *Deery,* 289 Mass. 431, 433, and cases cited. This is so even though the preponderance of the evidence may appear so great as to require the trial judge to set aside a verdict rendered for the plaintiff contrary to such preponderance. *Salem Trust Co.* v. *Deery,* 289 Mass. 431, at page 433, and cases cited. See also *Lee.* v. *Prudential Life Ins. Co.* 203 Mass. 299, 301; *Hicks* v. *H. B. Church Truck Service Co.* 259 Mass. 272, 276. It is the contention of the defendant that the directed verdict was proper because the plaintiff was bound by the doctor's statements which accompanied the proof of death furnished by the plaintiff to the defendant. These statements assert facts which are inconsistent with the plaintiff's recovery and it remains to be considered whether the plaintiff is bound by them.

The statements were not made by the plaintiff and are not sworn to by her. She agreed in the proof of death that these statements should be considered "a part of the Proofs of Death," but she made oath only that the statements "by her made" were true. There is no sound ground for holding that the physician's statements are binding upon her. It is generally assumed that such documents are admissible as evidence against the party who made use of them, and in cases of proofs of death, and doctors' certificates, the only question is as to the conclusiveness of such proofs. Wigmore on Evidence (2d ed.) § 1073, page 570, note 9. Physicians' certificates are admissible in an action against an insurer as an admission against interest by the beneficiary. Cooley, Briefs on Insurance (2d ed.) page 5928. However, the rule at present is that there is nothing conclusive about the statements of physicians, and

it is generally held that the beneficiary is not bound thereby but may contradict them by other evidence. It is usually held that such certificates are *prima facie* evidence of the truth and unless rebutted or denied will bind the beneficiary. See 93 Am. L. R. 1325, 1342, for collection of cases. It is held in several jurisdictions that no estoppel arises to prevent such contradiction. See *Laury* v. *Northwestern Mutual Life Ins. Co.* 180 Minn. 205, 212–213; *Mexicott* v. *Prudential Ins. Co. of America,* 263 Mich. 420, 423; *Hanna* v. *Connecticut Mutual Life Ins. Co.* 150 N. Y. 526; *Wertheimer* v. *Travelers' Protective Association of America,* 64 Fed. Rep. (2d) 435. The law of this Commonwealth seems now to be in accord with the rule that the statements in physicians' certificates are not binding on the beneficiary as matter of law, but may be rebutted. In the case at bar the physician's statements were answers to questions on form blanks furnished by the insurer. There is no conduct of the plaintiff or treatment of these answers by which she can be concluded or estopped in any way. Since these statements were not made by her, nor adopted as true by her, she is not conclusively bound by them. *Cluff* v. *Mutual Benefit Life Ins. Co.* 99 Mass. 317. *Barker* v. *Metropolitan Life Ins. Co.* 198 Mass. 375. It follows that it was error to direct a verdict for the defendant. The plaintiff's exceptions with respect to Exhibits 2, 3 and 4 must be overruled. They were competent as admissions against interest, constituting the proof of death offered by the plaintiff to the defendant. Compare *Traiser* v. *Commercial Travellers' Eastern Accident Association,* 202 Mass. 292, 298.

For the purposes of a new trial only it is material to consider the question raised by the plaintiff's exception to the admission of the records of the Boston Dispensary. It was agreed that the dispensary was incorporated and is a charitable institution, and there was evidence that it offers charitable medical treatment. The precise nature of this institution and the manner in which it operates do not appear, but its name indicates that it fulfils the same function as the out-patient department or the clinic in a hospital. It was in evidence that its doctors also made

outside visits in this instance. Without attempting to define the exact limits of meaning of "hospital," it would seem that the reason and beneficial effects of the statute admitting records in evidence could well be understood to include such an institution. However, the words "hospital" and "dispensary" are not to be considered as used synonymously by the Legislature, for they are treated separately in G. L. (Ter. Ed.) c. 111. Sections 50–57 specifically governing "dispensaries" impose no duty to keep records (apart from the implied requirements involved in G. L. [Ter. Ed.] c. 180, § 12) and it would be unreasonable to extend the word "hospitals" in § 70 to include dispensaries (§ 51), in view of the specific provisions of §§ 50–57 governing the latter. Hence G. L. (Ter. Ed.) c. 233, § 79, would not apply to records of a dispensary, not required to be kept by c. 111, § 70, and unless it can be shown that the Boston Dispensary is actually a hospital the records are not admissible by virtue of c. 233, § 79. However, the statute is not limited to cases treated within the walls of a hospital, but extends to cases "under their care." Without regard to where the treatment of a case cared for by a hospital or its staff is administered, a record of such treatment is within the statute equally with treatment administered in the hospital.

The contention of the plaintiff that the records were inadmissible because they "were introduced only on the question of liability" cannot be sustained. In *Clark* v. *Beacon Oil Co.* 271 Mass. 27, it was said at page 30: "The language of the statute does not make clear what 'liability' is referred to. In practice it has been taken to be liability for damage caused by the happenings which occasioned or attended the patient's presence in the hospital. A distinction is, therefore, to be made between entries which record details of diagnosis, treatment and prognosis with mention of facts helpful to the understanding of the medical or surgical case, and those which narrate events or state facts connected with the patient or the occasion for his resort to the hospital, but have no reference to his treatment or medical history in the hospital." It follows that

if the fact recorded is one of history or treatment of the case it is thereby admissible and may be offered as proof on any relevant issue. "The words of the statute, 'nothing therein contained,' refer to such entries in the records, if there are any, as do not relate to treatment and medical history. They do not refer to the entries regarding treatment and medical history made admissible by the earlier portions of the enactment. To hold otherwise would deprive the statute of its beneficial effect." *Clark* v. *Beacon Oil Co.* 271 Mass. 27, 30, 31. See *Kelley* v. *Jordan Marsh Co.* 278 Mass. 101, 111, which relates to entries of statements by the patient as to how an accident happened, not as to medical history or treatment which was not in evidence generally. See *Leonard* v. *Boston Elevated Railway*, 234 Mass. 480.

The question presented is whether the defendant was entitled to a directed verdict in its favor, or whether the case should have been submitted to the jury to determine whether the insured was "in good health" from September 13, 1930, to October 25, 1930, and had not been attended by a physician during that period or treated at the Boston Dispensary. The defendant introduced in evidence the statements of Dr. McQuiggan, and certain records of the Boston Dispensary relating to treatments of the insured during the period in question. If this evidence was believed by the jury, it is plain that the statements of the insured in the application for reinstatement, that he was in good health and had not consulted a physician during the time, were false and would preclude the plaintiff from recovery. The plaintiff testified that she was the wife of the decedent and the beneficiary under the policy; and that at the time he took out the policy he was in good health, and was in good health from September 13 up to and including October 25, 1930, when he signed the certificate for reinstatement. She also testified that Dr. McQuiggan never treated her husband during October, 1930. The burden was on the plaintiff to show that the insured was in good health when the application for reinstatement was made to the defendant. It was a condition precedent to the appli-

cation being effective. The direction of a verdict for the defendant in effect was a ruling that there was no evidence of that fact proper to be submitted to the jury. It was said by Chief Justice Knowlton speaking for the court in *Lee* v. *Prudential Life Ins. Co.* 203 Mass. 299, at page 301: "The evidence seems very convincing in favor of the defendant, and it is not to be supposed that, upon the testimony reported, a jury would have found for the plaintiff. But the testimony which seems to present the facts clearly on this point came almost entirely from witnesses called by the defendant. The question of law before us relates, not to the weight of the evidence, but to the existence or non-existence of evidence which, taken by itself alone, would warrant an inference that the plaintiff was in good health at the time of the payment. On this question the plaintiff is entitled to have the case considered as it was before the defendant's witnesses were called."

We are of opinion in the present case that the verdict was improperly directed for the defendant. If the jury did not believe the evidence that the insured was treated by Dr. McQuiggan, or that he was treated at the Boston Dispensary, or that he had a serious heart affection during the period in question, and credited the testimony of his widow to the contrary, they could have found for the plaintiff. "It has been said by this court that a verdict can rarely be directed in favor of a party having the burden of proof where the evidence consists of oral testimony. *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 452. . . . Moreover, regardless of which party has the burden of proof, it is held in this Commonwealth that a verdict will not be directed for a party unless the evidence when construed most favorably to the opposite party would not warrant a contrary verdict, or unless evidence by which such opposite party is bound would make impossible a verdict in his favor." *Salem Trust Co.* v. *Deery,* 289 Mass. 431, 433.

*Exceptions sustained.*