ARTHUR F. McCLEAN *vs.* THE UNIVERSITY CLUB.

Suffolk.    October 5, 6, 1950. — February 16, 1951.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Innholder.  Club.  Contract,* Between innkeeper and guest.  *Evidence,*
Conflicting statements of witness, Hospital record.  *Damages,* For
breach of contract.  *Error,* Whether error harmful.  *Practice, Civil,*
Exceptions: whether error harmful.

Evidence of the circumstances in which a member of a private club, who
had hired a bedroom in its clubhouse and thereby had entered into a
relationship with it similar to that of innkeeper and guest, was ordered
by the club's manager to leave the clubhouse at a time when he, the
member, was seriously ill from excessive use of intoxicating liquor,
and was conducted from his room to an exit of the clubhouse and
there left alone, whereupon he collapsed and sustained personal in-
juries, warranted findings that he was evicted in a manner endangering
his safety through want of proper regard to an obviously impaired
condition of his faculties and that thereby there was a breach by the
club of its contract with him resulting in the injuries sustained, and
justified recovery by him therefor in an action of contract against
the club.

It was properly left to the jury to decide which of two contradictory
portions of the plaintiff's testimony respecting his own physical condi-
tion they would accept as true.

At the trial of an action for personal injuries, there was no error in re-
fusing to admit in evidence, as part of the record of a hospital where
the plaintiff was treated, an attached record of his condition made
by a clinic to which he had previously gone but which was not shown
to be a hospital of the kind described in G. L. (Ter. Ed.) c. 233, § 79,
as amended.

In an action for personal injuries resulting from an improper eviction of
the plaintiff from a clubhouse of the defendant, a private club with
which he had a relationship similar to that of innkeeper and guest,
the plaintiff could recover as much damages on a count in contract as
on a count in tort, and was not prejudiced by the direction of a verdict
for the defendant on the tort count where he obtained a verdict on
the contract count.

TORT OR CONTRACT.    Writ in the Superior Court dated
June 21, 1946.

The action was tried before *Dowd,* J.

*J. A. Perkins,* for the defendant.

*L. B. Newman,* (*C. B. King* with him,) for the plaintiff.

RONAN, J.   This is an action to recover for personal injuries, which the plaintiff alleged in the first count in tort were sustained when he was evicted from the defendant's clubhouse in violation of the duty which it, as an innkeeper, owed to him, and which he alleged in the second count were due to a breach by the defendant of the contract which it had with the plaintiff as its guest.  The judge at the close of the evidence directed a verdict for the defendant upon the first count, subject to the exception of the plaintiff.  The jury returned a verdict for the plaintiff upon the second count. The defendant excepted to the denial of a motion to direct a verdict in its favor on the second count.  Both parties took exceptions to rulings on evidence.  The defendant also saved exceptions to the refusal to grant certain requests and to parts of the charge.  The case is here upon a consolidated bill of exceptions.

The jury having found for the plaintiff, he is entitled to have the evidence viewed in the light most favorable to him. The evidence so regarded would warrant the jury in finding the facts now narrated.  The plaintiff had been for many years addicted to the excessive use of intoxicating liquors, and at times he relinquished his duties as a steel specialist and salesman for periods of from two to three weeks during which he would drink to excess, "getting sick as a dog and going back to work."  He was a member in good standing of the defendant, a private club, whose members paid dues and also charges for liquor and special services.  The defendant maintained eighty-eight bedrooms for the use of its members or their guests who were entitled to secure a room upon registering their names and paying the prescribed rate.

The plaintiff had for years enjoyed the accommodations furnished by the defendant during his drinking periods, and his habits in this respect were well known to some of the attendants at the club.  A year before the occurrence now

in question, his condition while at the club became so serious that it was necessary to remove him in an ambulance to a hospital. Recurring to the instant case it appears that from April 10, 1946, to April 21, 1946, he hired a room daily from the defendant and occupied it during one of his drinking periods. A guest having a room at the defendant club may occupy it until five o'clock of the next afternoon. He rented a room on the night of April 21, 1946. On the morning of April 22, 1946, he was not intoxicated but he was deathly sick. He thought he was going to die. He was dizzy, groggy, and very weak. He had attacks of vomiting. He tried to communicate with the attendants but they were not available. There was a slip on the telephone switchboard signed by the defendant's manager, notifying the operator not to put through calls to or from the plaintiff's room. He finally succeeded at about noontime in communicating with the manager, who refused his request for a doctor and ordered him to leave the room in an hour. The manager returned to the plaintiff's room in two hours, and the plaintiff left and went down the elevator with him. The manager and another man accompanied the plaintiff as they travelled along the lobby. The other man was supporting the plaintiff. The plaintiff then walked to the back or employees' entrance which adjoined an alleyway where the plaintiff's automobile had been parked. He told the manager that he was in no condition to leave, that he could not walk, and that he wanted a doctor. As he was going from his room on his way to the back exit he could not stand up very well, he needed support, and the one who was holding him by the arm told him to move along when he asked for a doctor. The plaintiff, who was then alone, collapsed as he was leaving the back entrance, receiving injuries which later proved to be serious. He picked himself up and got into his automobile where he remained lying on the back seat until the evening of April 23, 1946, except when he left the automobile on the afternoon of April 22, 1946, to get some brandy and milk in an effort to secure relief and when the defendant's bartender on the evening of April 22, 1946, awakened him

and walked him fifty feet trying to straighten him out. The plaintiff was then in a stupor and incoherent, and required support while out of his automobile.

The plaintiff was a guest of the defendant, and the latter was bound, if not expressly then impliedly, by the terms and conditions of its contract with the plaintiff to accord him decent and humane treatment and to see to it that its agents and servants did not abuse or insult him, or unnecessarily subject him to any conduct which would cause him physical discomfort, humiliation or distress of mind or which would imperil his safety. The plaintiff was also entitled to the exclusive use and enjoyment of his room during the period for which it was hired, except when it became necessary for the defendant to enter in an emergency or in the usual and ordinary conduct of its business, unless the plaintiff lost that right by disturbing the peace, conducting himself in a manner offensive to the other guests, violating the reasonable rules and regulations of the defendant, or acting in such a manner as to bring its reputation into disrepute. If the plaintiff became ill while a guest and the defendant decided to remove him from the premises, the defendant was bound to pay proper attention to the plaintiff's condition and not evict him in such a manner as would impair his health or endanger his safety. The obligations arising out of the relationship existing between the plaintiff and the defendant have been frequently stated and have become well settled. *Frewen* v. *Page,* 238 Mass. 499. *Lehnen* v. *E. J. Hines & Co.* 88 Kans. 58. *Gustafson* v. *Arthur L. Roberts Hotel Co.* 194 Minn. 575. *Dalzell* v. *Dean Hotel Co.* 193 Mo. App. 379. *De Wolfe* v. *Ford,* 193 N. Y. 397. *Morningstar* v. *Lafayette Hotel Co.* 211 N. Y. 465. *Boyce* v. *Greeley Square Hotel Co.* 228 N. Y. 106. *Odom* v. *East Avenue Corp.* 178 Misc. (N. Y.) 363. *Kellogg* v. *Commodore Hotel, Inc.* 187 Misc. (N. Y.) 319. *McHugh* v. *Schlosser,* 159 Pa. 480.

One of the implied terms of the contractual relation between the plaintiff and the defendant, even if the defendant was not strictly a public innkeeper, as the jury were told, was that the defendant would not interfere with the con-

venience and comfort of the plaintiff, its guest, nor abuse nor insult him, nor engage in any conduct which would subject him to mental distress or personal injury. The defendant, however, as the jury were correctly instructed, was under no legal obligation to secure a physician for the plaintiff. The plaintiff, being a member of the defendant club, was bound by its by-laws giving the manager immediate control of. the club and the manner in which it conducted its business, but this did not give it the right to violate the implied obligations which it owed to the plaintiff and which arose out of letting the room to him and accepting him as its guest. The defendant was responsible for the conduct of its manager within the scope of his employment toward a paying guest member. *Kitchen* v. *Women's City Club of Boston,* 267 Mass. 229, 231. *Staples* v. *Pond Club, Inc.* 319 Mass. 238, 241. *Beecroft* v. *New York Athletic Club,* 111 App. Div. (N. Y.) 392. *Abbott* v. *Richmond County Country Club,* 211 App. Div. (N. Y.) 231, affirmed 240 N. Y. 693.

The jury were not required to find that the plaintiff acted in such a manner as to justify his removal. Nor were they required to believe that the reason for ordering the plaintiff from his room was that all the rooms were reserved, that no rooms were available to the plaintiff, that the room had been rented to another person, and that it was necessary to change the mattress, clean up the room, or air the room to eliminate the odors, so as to have the room presentable for the incoming guest. They could find that the plaintiff's condition was such that the defendant, if justified in evicting him at all, did not do so with proper regard to the condition of its guest. The jury must have followed the instructions that, if the manager was acting reasonably in requesting and compelling the plaintiff to leave, the defendant was not liable, and in returning a verdict for the plaintiff they must have come to the conclusion that the manager acted unreasonably and in violation of the implied terms and conditions of the plaintiff's contract. There was no error in denying the defendant's motion for a directed verdict upon the second count.

We now consider the remaining exceptions of the defendant.

The plaintiff testified that as he left the club he was sober and walked from his room to the elevator, went down the elevator, walked across the lobby, and went down the three or four steps leading to the rear door, and that he was able to do these things. The judge instructed the jury that the plaintiff was bound by this testimony, unless there was other evidence to the contrary. The defendant contends that this testimony bound the plaintiff irrespective of what other testimony as to his condition was given by other witnesses. The general rule is that evidence of this character binds a party who gives it, *Laffey* v. *Mullen*, 275 Mass. 277, *Germaine* v. *Boston & Albany Railroad*, 298 Mass. 501, *McFaden* v. *Nordblom*, 307 Mass. 574; but in those cases there was not, as there was in this case, evidence of the same character given by the plaintiff as to his condition which pointed in an opposite direction. It was properly left to the jury to decide which of the plaintiff's versions of his physical and mental condition they would adopt as true. There was no error in the charge in so far as it dealt with this evidence, or in the failure to grant the defendant's requests relating to the matter.

The jury were correctly instructed that, if the plaintiff was in possession of his power of locomotion and his faculties as he went down the stairs to the rear entrance, the defendant would not be liable for what subsequently happened to him. If the plaintiff's condition was such that he was helpless and the defendant's manager knew or ought to have known of his condition, the defendant would be liable for any harm which the plaintiff might sustain and which the defendant might reasonably have foreseen. *Hudson* v. *Lynn & Boston Railroad*, 178 Mass. 64. *Black* v. *New York, New Haven & Hartford Railroad*, 193 Mass. 448. We do not think that a guest must be absolutely helpless in order that heed should be given before he is evicted and as to the manner in which it is to be accomplished. It is enough that the plaintiff's faculties were obviously impaired to such an

extent that he was unable to protect himself and that the defendant knew or ought to have known that it was reasonably probable that his eviction might result in serious personal injury to him, even if the particular form in which the injury occurred might not have been specifically foreseen, so long as the injury sustained was a natural and probable consequence of the manager's action. *Hill* v. *Winsor*, 118 Mass. 251, 259. *Bellows* v. *Worcester Storage Co.* 297 Mass. 188, 196. Restatement: Torts, § 435. The judge finally left this aspect of the case to the jury by instructing them that "if the plaintiff was in possession of his power of locomotion the defendant owes him no responsibility. I think that is so." This was too favorable to the defendant. The charge covered the requests — in so far as the defendant was entitled to them — that, if the plaintiff reasonably appeared to be able to walk and care for his safety, the manager was under no duty to assist him.

The plaintiff went to the Lahey Clinic, Inc., hereinafter called Lahey, on May 3, 1946, where a record was made of his condition, and on the same day he was taken to the Corey Hill Hospital. The Lahey record was photographed, sent to the Corey Hill Hospital, and attached to the record of the plaintiff's case made by this hospital. At the trial this combined record was used to refresh his memory by a physician who treated the plaintiff at the Corey Hill Hospital. The Lahey record did not mention any injury to the plaintiff's foot and stated that his injury to his arm was caused by falling out of bed. The Lahey record did not thereby become substantive evidence. *Commonwealth* v. *Ponzi*, 256 Mass. 159, 161–162. *Bendett* v. *Bendett*, 315 Mass. 59, 64–65. The judge subsequently instructed the jury to disregard the statement in that record that the cause of the plaintiff's injury was falling out of bed. This instruction was correct. *Inangelo* v. *Petterson*, 236 Mass. 439, 440. *Sullivan* v. *Morse*, 271 Mass. 501, 504–505. *Trump* v. *Burdick*, 322 Mass. 253, 254–255. The judge afterwards refused to admit the Lahey record as a part of the Corey Hill Hospital record. In this there was no error.

It did not appear that Lahey was a hospital of the kind described in G. L. (Ter. Ed.) c. 233, § 79, as amended. *Karpowicz* v. *Manasas*, 275 Mass. 413. *Burke* v. *John Hancock Mutual Life Ins. Co.* 290 Mass. 299. *McGaffigan* v. *Kennedy*, 302 Mass. 12, 13. *Commonwealth* v. *Galvin*, 323 Mass. 205, 220. If Lahey·was shown to be such a hospital as described by the statute, its record could have been introduced independently of the Corey Hill Hospital record. In the next place, we do not think that by merely attaching a copy of the Lahey record to the Corey Hill Hospital record it became a part of the record of the latter. Hospital records are hearsay evidence which are made competent evidence subject to the conditions and limitations prescribed by the statute. *Kelley* v. *Jordan Marsh Co.* 278 Mass. 101, 111. The statute, G. L. (Ter. Ed.) c. 233, § 79, as amended by St. 1948, c. 74, provides that the "Records kept by hospitals under section seventy of chapter one hundred and eleven shall be admissible . . . as evidence in the courts of the commonwealth so far as such records relate to the treatment and medical history of such cases." Hospitals coming within the scope of G. L. (Ter. Ed.) c. 111, § 70, as amended by St. 1945, c. 291, are required to "keep records of the treatment of the cases under their care and the medical history of the same." The records which are admissible are those of hospitals of the class defined in § 70 which under that section they are required to keep. The statute has no application to the records of other hospitals.

One of the contentions of the plaintiff was that he was entitled to occupy his room up to five o'clock in the afternoon, which was the usual check out time, and that compelling the plaintiff to leave before that time was a breach of his contract. This issue was entirely eliminated in so far as there was any causal relation between this alleged breach and the plaintiff's fall, which the jury could find was the principal cause of the plaintiff's personal injuries, by the instructions that whether "he left the room at 3, 4 or 5 o'clock is absolutely immaterial to the fall which occurred on the street." This was too favorable to the defendant.

The question was whether there was a causal connection between being compelled to give up his room before five o'clock and the accident, and not whether he might have fallen whatever time he left. *Davis* v. *Garrett*, 6 Bing. 716. The four requests for instructions to the effect that the defendant could not be held liable unless it was shown that the fall would not have happened if he had been permitted to occupy his room until the customary check out hour accordingly became immaterial.

We now consider the plaintiff's exceptions other than exceptions to rulings on evidence which, in view of the conclusion we reach, have now become immaterial.

The plaintiff was not prejudiced by the action of the judge in directing a verdict for the defendant on the first count. There is nothing in the contention that the plaintiff might have recovered more damages on the tort count than he could on the contract count. In *Frewen* v. *Page*, 238 Mass. 499, where the plaintiffs, being required to elect, chose to go to the jury on a contract count in an action against an innkeeper for improper treatment of the plaintiff guests, it was said at page 505, "the plaintiffs can recover in contract, as fully as if they had sued in tort." It was said in *Boyce* v. *Greeley Square Hotel Co.* 228 N. Y. 106, 111, "As a general rule, mental suffering resulting from a breach of contract is not a subject of compensation. The rule does not obtain, however, as between a common carrier or an innkeeper and an insulted and abused passenger or guest, or the proprietor of a public resort and a patron publicly ejected. *Emmke* v. *De Silva*, 293 Fed. 17. *De Wolfe* v. *Ford*, 193 N. Y. 397. *Odom* v. *East Avenue Corp.* 178 Misc. (N. Y.) 363. *Kellogg* v. *Commodore Hotel, Inc.* 187 Misc. (N. Y.) 319.

The various other exceptions have been examined and considered but they require no further discussion. We perceive no error in any of them.

*Plaintiff's exceptions overruled.*

*Defendant's exceptions overruled.*