**Dawn F. MUNDAY**

v.

**WASTE MANAGEMENT OF NORTH AMERICA, INC., et al.**

**Civil No. Y–92–467.**

United States District Court, D. Maryland.

March 16, 1998.

---

Harold R. Weisbaum, Baltimore, MD, for Plaintiff.

Russell H. Gardner, Baltimore, MD, Charles J. Kresslein, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

### I.

Plaintiff Dawn F. Munday ("Munday") brought this action against Waste Management of North America, Inc. and Waste Management of Maryland, Inc. (collectively, "Waste Management") for sex discrimination, sexual harassment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended. Munday also alleged that Defendants engaged in constructive discharge and breached a settlement agreement resulting from a previous complaint Munday filed against Waste Management before the Howard County, Maryland Office of Human Rights.

The facts are detailed in a reported opinion by Judge Kaufman [1] after the trial, *see Munday v. Waste Management of North America, Inc.,* 858 F.Supp. 1364, 1367–73 (D.Md. 1994), *aff'd in part, rev'd in part,* 126 F.3d 239 (4th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1053, 140 L.Ed.2d 116 (1998), and the Fourth Circuit held they are undisputed. *Munday,* 126 F.3d at 241. While

---

1. This case was originally assigned to Judge Frank A. Kaufman of this Court, who conducted the trial of the case and who wrote the original *Munday* Opinion. Judge Kaufman died in 1997, and the case was reassigned after its remand by the Fourth Circuit.

working as a truck driver with Waste Management's Baltimore office from August 1988 to May 30, 1989, Munday alleges she was subjected to several acts of sexual harassment, including denial of access to the lone women's bathroom; receiving less pay than her male co-workers; being told she should not, as a woman, be taking a job away from a man; placement of her paperwork in the "driver's lounge", which was the men's restroom and changing area; and being the butt of numerous sexual jokes. *Munday,* 858 F.Supp. at 1367–68.

On May 30, 1989, Munday was fired for insubordination, and filed a complaint with the Howard County, Maryland Office of Human Rights. *Id.* at 1368. Ultimately, the administrative proceedings were settled, and the parties entered into a settlement agreement in which Waste Management agreed, *inter alia,* to reinstate Munday, not to retaliate against Munday for filing the administrative charges, and not to retaliate against any person for engaging in protected activity of any kind. *Id.* at 1368–69.

Prior to Munday's return, employees of Waste Management were told not to socialize with Munday, to avoid her as much as possible, and to report back anything she said. *Id.* at 1369. On July 26, 1991, Munday was informed that her supervisor, Robert Bohager, wanted to "get rid" of her, and that he had instructed employees not to talk with her. *Id.* at 1370. Later that day, at a scheduled meeting between Munday, Bohager, and Waste Management's Maryland operation manager, Bohager exploded at Munday and accused her of planning to sue the company. When Munday denied this, and attempted to address her concerns, Bohager told her he did not care about her problems. *Id.* However, no evidence was produced that Waste Management employees actually spied on Munday, or that she complained of being ignored. *Munday,* 126 F.3d at 244. From August 1991 to September 1992, Munday worked periodically due to several periods of disability leave. However, Munday was continuously ignored by Waste Management employees, assigned a route other than one she requested, and subjected to numerous unpleasantries which were adequately addressed by Waste Management. *Munday,* 858 F.Supp. at 1370–71. Munday left the company December 7, 1992.

After a bench trial, Judge Kaufman found that Munday failed to prove sexual discrimination or sexual harassment, but that she did prove retaliatory discharge, constructive discharge, and breach of the settlement agreement. Munday was awarded $77,-183.47 in damages. On appeal, the Fourth Circuit reversed the judgment on the claims of retaliation and constructive discharge, holding that Waste Management had not taken adverse employment action against Munday in retaliation for engaging in protected activity. *Munday,* 126 F.3d at 243–44. However, the court affirmed the finding that Waste Management's actions had breached the settlement agreement, reasoning that its deliberate attempts to make Munday's re-employment as unpleasant as possible violated the agreement, and that the agreement's language required a "lower threshold of proof" than the adverse employment action needed to show a violation of Title VII. *Id.* at 245. The court then remanded the case for a recomputation of damages in light of its decision to reverse the judgment on the Title VII claims. *Id.* Currently pending before the Court are cross-motions for summary judgment on the damages issue.

## II.

### A.

The original *Munday* Opinion limited Munday's damages for breach of the settlement agreement to Title VII damages, reasoning that although the settlement agreement was a private contract to be enforced under Maryland law, federal law governed its enforcement and interpretation because the rights therein derived from Title VII. *Munday,* 858 F.Supp. at 1380. Because the breach of contract claim necessarily depended on finding a breach of Title VII, state and federal remedies were found coextensive because Munday could not recover damages unavailable under the federal law providing the right to be enforced. *Id.* at 1381. Accordingly, Munday's damages prior to November 21, 1991 were limited to the Title VII

remedies available at that time, which were solely the equitable remedies of back pay and reinstatement. Munday's damages after that date, when the Civil Rights Act of 1991 became effective and expanded Title VII remedies, included compensatory and punitive damages. *Id.* at 1376–80.

The Fourth Circuit, however, disagreed with this analysis, holding that the language "of any kind" contained in the settlement agreement required "a lower threshold of proof than the adverse employment action required to show a violation of [42 U.S.C.] § 2000e–3(a) [regarding retaliation]." *Munday*, 126 F.3d at 245. Section 2000e–3(a) prohibits retaliation or discrimination based on an employee's opposition to an unlawful employment practice as defined by Title VII, or because the employee participated in proceedings under Title VII. To prevail on a claim under this section, the employee must, by a preponderance of evidence, initially prove a prima facie case of retaliation, which consists of three elements: (1) proof that the employee engaged in protected activity; (2) proof that the employer took adverse employment action against the employee, and; (3) proof of a causal connection between the protected activity and the discrimination. *Munday*, 126 F.3d at 242. Thus, the Fourth Circuit held that Munday need not prove the elements of a Title VII retaliation claim to prevail on her breach of contract claim by holding that Munday need not meet the "adverse employment action" requirement of § 2000e–3(a).[2] A necessary corollary to this holding is that the right giving rise to Munday's breach of contract claim is not Title VII, but rather, state contract law. Accordingly, the Court applies Maryland law concerning the measure of damages in a case for breach of contract unless, as discussed below, Title VII remedies pre-empt state law remedies for breach of contract.

**2.** This Court has defined "adverse employment action" as "ultimate employment decisions", rather than "interlocutory or mediate decisions having no effect upon employment conditions." *Raley v. Board of St. Mary's County Comm'rs*, 752 F.Supp. 1272, 1281 (D.Md.1990) (citing *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.1981)). Such decisions typically include hiring, firing, granting

**B.**

◼ The Supreme Court, in *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), noted that federal law can pre-empt state law in two general ways. First, if Congress evinces an intent to occupy completely a given field, any state law falling within that field is pre-empted. *Id.* 464 U.S. at 248. Second, if Congress has not entirely displaced state regulation over the matter in question, federal law pre-empts state law only to the extent that the state law conflicts with the federal law. *Id.* The pre-emption issue in *Silkwood* was whether the enactment and amendment of the Federal Atomic Energy Act pre-empted an award of punitive damages under state law in cases of personal injuries by nuclear accidents. Respecting the first pre-emption method, the Court noted that the legislative history of the Act clearly evinced Congress' intent not to pre-empt state law, and that Congress assumed state law remedies would be available—at least in the absence of a truly extraordinary nuclear incident. *Id.* at 254–56. Regarding the second, the Court concluded that the punitive damages award did not conflict with the Nuclear Regulatory Commission's authority to impose penalties on nuclear licensees because it was possible to pay both state law damages and NRC fines, and because the purpose of the statute was not frustrated by such an award. *Id.* at 257–58.

Federal courts specifically addressing the issue have held that Title VII does not pre-empt state contract laws. *Frazier v. Colonial Williamsburg Found.*, 574 F.Supp. 318, 321 (E.D.Va.1983); *Stahl v. Sun Microsystems, Inc.*, 775 F.Supp. 1394, 1397 (D.Colo. 1991), *aff'd*, 19 F.3d 533 (10th Cir.1994); *see also California Fed. Sav. & Loan Ass'n v. Guerra*, 758 F.2d 390, 396 (9th Cir.1985), *aff'd*, 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987) (finding no Title VII pre-emption of state law concerning maternity leave);

leave, promoting, and compensating. *E.g., Ward v. Johns Hopkins Univ.*, 861 F.Supp. 367, 377 (D.Md.1994); *see also Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir.1996) (termination, demotion, less distinguished title, material loss of benefits or responsibilities, considered to be adverse employment action).

*Shehadeh v. Chesapeake & Potomac Tel. Co.,* 595 F.2d 711, 723 n. 60 (D.C.Cir.1978) ("[Title VII] envisions coexistence of state and federal remedies when the two are compatible"). These cases are consistent with general principles of pre-emption. As the *Frazier* court noted, Title VII's legislative history indicates that it was meant to provide an additional source of rights and remedies for victims of discrimination, rather than an exclusive federal statutory scheme. *Frazier,* 574 F.Supp. at 321; *see also Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 48, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), *abrogated. on other grounds,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The plain language of Title VII's savings clause also supports this result. *See* 42 U.S.C. § 2000e–7. No evidence has been produced suggesting it is impossible to comply both with Title VII's remedial provisions and Maryland remedies of contract law, or that Maryland contract law somehow frustrates the broad remedial purpose of Title VII. Indeed, enforcement of Maryland contract law in this case promotes employment opportunity and equality by punishing an employer for what Judge Kaufman previously characterized as malicious treatment of Munday for pursuing her Title VII claims. *Munday,* 858 F.Supp. at 1380.[3]

The Court therefore holds that Maryland contract law applies to determine the measure of Munday's damages resulting from Waste Management's breach of the settlement agreement.

### III.

### A.

■ Maryland generally follows the rule of *Hadley v. Baxendale,* 156 Eng.Rep. 145 (1854), and holds that upon breach of contract, the non-breaching party is entitled to compensatory damages which are the natural and proximate consequence of the breach, or which are reasonably within the parties' contemplation at the time of contracting. *E.g., Stone v. Chicago Title Ins. Co.,* 330 Md. 329, 342, 624 A.2d 496 (1993). The measure of such damages is the sum which would place the injured party in the same position as if the contract had been performed. *Beard v. S/E Joint Venture,* 321 Md. 126, 133, 581 A.2d 1275 (1990).

■ Punitive damages are not available in a pure action for breach of contract, even if the breach is malicious. *St. Paul at Chase Corp. v. Manufacturers Life Ins. Co.,* 262 Md. 192, 236, 278 A.2d 12 (1971). Maryland formerly held that punitive damages were available for torts "arising out of" a breach of contract; however, it is now clear under Maryland law that, as with any other non-intentional tort, proof of actual malice is required. *Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992).

### B.

Judge Kaufman previously found that Munday was entitled to compensatory damages of $17,183.47 in backpay, $20,000 for mental suffering, and $40,000 in punitive damages. *Munday,* 858 F.Supp. at 1381. The award was premised on Title VII principles, and the Fourth Circuit's finding that no Title VII violation occurred requires reconsideration of Munday's damages.

■ The Court finds the previous award of backpay is supported by Maryland law. As stated above, the party injured by a breach of contract may recover damages which are the natural and proximate consequence of the breach. The breach in this case is Waste Management's retaliation against Munday by making her working environment as unpleasant as possible. It is undisputed that these actions were undertak-

---

**3.** The case of *Snider v. Circle K,* 923 F.2d 1404 (10th Cir.1991), cited by Waste Management, does not require a different result. In *Snider,* the court held that a plaintiff seeking relief for breach of a Title VII agreement was not entitled to a jury trial because the contract was "inextricably linked" to Title VII; accordingly, federal common law applied because the rights of the litigant derived from the federal statute. *Id.* at 1407. *Snider* does not specifically address the pre-emption issue. *Stahl,* 775 F.Supp. at 1397. Further, the Fourth Circuit has expressly found that Munday's breach of contract claim is not linked to Title VII, but instead requires a substantially lower burden of proof than that required by the federal statute. Accordingly, *Snider* is inapposite here.

en with actual malice toward Munday. *Id.* at 1380. The Fourth Circuit found that Munday had not proven sufficient intolerableness, and, therefore, adverse employment action, to sustain a Title VII claim. Nevertheless, where, as here, an employer maliciously breaches a contract not to retaliate in any manner against an employee for engaging in protected activity, the Court finds it reasonably foreseeable that the employee will terminate his employment and suffer lost wages equivalent to backpay in a Title VII case. Indeed, Waste Management very likely intended precisely this result. Accordingly, the Court will award Munday $17,183.47 in backpay.[4]

■ The Court will also award pre-judgment interest on this amount, because in Maryland, interest is recoverable in a breach of contract action where the contract is for payment of a definite sum of money. *Lichtenberg v. Joyce*, 183 Md. 689, 696, 39 A.2d 789 (1944). The Court finds that pre-judgment interest of 4%, which approximates inflation during the relevant pre-judgment period of December 1992 to August 4, 1994, is appropriate. *See Ford v. Rigidply Rafters, Inc.*, 984 F.Supp. 386, 391–92 & n. 5 (D.Md. 1997). Accordingly, the Court, applying the formula approved in *Ford*, will award Munday $18,366.05 in backpay and pre-judgment interest.

### C.

■ The next issue is whether Munday should receive damages for her mental pain and suffering. The original *Munday* Opinion noted that Maryland law permits recovery of compensatory damages for mental pain and suffering in an action for breach of contract only if the breach also causes bodily harm or the breach is of such a kind that serious emotional disturbance is a particularly likely result. *Munday*, 858 F.Supp. at 1379 (citing RESTATEMENT (SECOND) OF CONTRACTS § 353). Although § 353 represents the modern view on the issue, Maryland has not adopted this

section of the Restatement, and it appears Maryland has not decided whether compensatory damages for mental anguish are available in an action for breach of contract.

Other jurisdictions addressing the issue reach somewhat differing results. Some courts hold that compensatory damages for mental anguish are not available in an action for breach of contract. *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 72 (Tex.1997); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454, 460 (1994); *Strawser v. Wright*, 80 Ohio App.3d 751, 610 N.E.2d 610, 612 (1992); *Klein v. Empire Blue Cross & Blue Shield*, 173 A.D.2d 1006, 569 N.Y.S.2d 838, 840 (App. Div.1991); *Jarvis v. Prudential Ins. Co.*, 122 N.H. 648, 448 A.2d 407, 410 (1982). Others hold that such damages are available for breaches of certain types of contracts likely to result in serious emotional disturbance. *McClean v. University Club*, 327 Mass. 68, 97 N.E.2d 174, 180 (1951);[5] *Gayer v. Bath Iron Works Corp.*, 687 A.2d 617, 621 n. 3 (Me.1996). Finally, other courts follow the Restatement approach discussed above. *Decker v. Browning–Ferris Indus.*, 931 P.2d 436, 448 (Colo.1997); *Doe v. Roe*, 289 Ill. App.3d 116, 224 Ill.Dec. 325, 681 N.E.2d 640, 650 (1997); *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 444–45 (Del. 1996); *Picogna v. Board of Educ.*, 143 N.J. 391, 671 A.2d 1035, 1037 (1996); *Sexton v. St. Clair F.S.B.*, 653 So.2d 959, 960 (Ala.1995); *Rodgers v. Nationwide Mut. Ins. Co.*, 344 Pa.Super. 311, 496 A.2d 811, 815 (1985).

The Court finds an award for mental anguish is appropriate under Maryland law for two reasons. First, the earlier decision that Maryland law permits such a damage award is arguably law of the case which governs this stage of the litigation. *See Agostini v. Felton*, —— U.S. ——, ——, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997); *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The Fourth Circuit

---

4. The parties agree that this amount represents Munday's backpay—the difference between what she would have earned had she stayed at Waste Management and what she actually earned after her employment terminated. *Munday*, 858 F.Supp. at 1377.

5. *But see St. Charles v. Kender*, 38 Mass.App.Ct. 155, 646 N.E.2d 411, 413 (1995) (following Restatement approach).

left the analysis concerning the availability of damages for mental anguish under Maryland law intact; accordingly, it is still law of the case. *See Cowgill v. Raymark Indus., Inc.,* 832 F.2d 798, 802 (3rd Cir.1987).

 Second, even if the earlier decision is not law of the case, the Court finds it is correct. Because no clearly controlling Maryland decision exists on this point, this Court must attempt to determine what the Maryland Court of Appeals would hold if confronted with the same issue. *Reid v. Life Ins. Co. of N. America, Inc.,* 718 F.2d 677, 680 (4th Cir.1983); *United States ex rel. Joslin v. Community Home Health of Md., Inc.,* 984 F.Supp. 374, 381 (D.Md.1997). Although decisions of other jurisdictions are not binding in Maryland, they are persuasive authority and the courts of Maryland will consider their persuasive value in addressing a question of first impression. *Deckard v. State,* 38 Md. 186, 209 (1873); *Cates v. State,* 21 Md.App. 363, 372, 320 A.2d 75 (1974). Because Maryland follows the rule of *Hadley v. Baxendale, supra,* the Court reasonably believes that the Court of Appeals would, if confronted with the issue, hold that damages for mental anguish are available in a breach of contract case if bodily harm results, or the breach is of such a kind that serious emotional disturbance is a likely result. This rule conforms to Maryland's general rule that compensatory damages are available in breach of contract actions for damages which naturally and proximately result from breach by considering whether the breach in question is likely to result in serious mental anguish, and is in general accord with the law of other jurisdictions.

Applying these principles to the instant case, the Court finds the breach of the settlement agreement was of a kind likely to induce severe emotional distress. Waste Management's employees were aware of Munday's emotional problems and acted with actual malice; under these circumstances, a reasonable fact finder would conclude that the breach was likely to cause

severe emotional distress. *Munday,* 858 F.Supp. at 1379–80. Moreover, the retaliatory conduct was of a nature that no reasonable employee should be expected to endure, and the record contains expert testimony establishing Munday's serious emotional conditions resulting from this incident. *Id.* at 1371, 1378–79. These undisputed and binding facts demonstrate that severe emotional distress was a natural and likely consequence of the breach. Further, just as some courts recognize that such severe distress is a natural and likely result of a breach of contract connected with a wrongful discharge, *e.g., Smith v. Atlas Off–Shore Boat Service, Inc.,* 653 F.2d 1057, 1064 (5th Cir.1981), it is natural and probable that an employee will suffer severe mental anguish where the breach of contract involved is one for retaliation for engaging in protected activity because engaging in such protected activity, and the retaliation, are both emotionally charged events. The Court therefore finds the original determination that Munday suffered $50,000 of compensatory damages for mental anguish should represent the amount of damages so awarded.[6]

### D.

 Munday was previously awarded punitive damages of $40,000. Although punitive damages are generally unavailable in Maryland for breach of contract, such damages were found appropriate because Defendants' conduct constituted a federal tort (violation of Title VII) connected to the breach. *Munday,* 858 F.Supp. at 1380.

As discussed above, punitive damages are not available in an action solely for breach of contract, and the original award of punitive damages for a tort related to the breach cannot be sustained in light of the Fourth Circuit's decision that no Title VII violation occurred. Munday, however, argues that Waste Management's conduct constituted wrongful discharge under Maryland law, entitling her to punitive damages. However, Munday did not claim wrongful discharge in

---

**6.** Munday was previously awarded $20,000 for mental anguish due to a finding that Title VII pre-empted $30,000 of the total $50,000. *Munday,* 858 F.Supp. at 1378. As discussed above,

however, the Fourth Circuit found no Title VII violation, and Title VII does not pre-empt Maryland contract law. Accordingly, Munday should receive the entire $50,000.

her complaint, and the Court will not permit her effectively to amend her pleadings at this extremely late stage of the litigation because Waste Management would be severely prejudiced by the inability to address the issue at a trial or to have relevant related discovery. *See In re Jeffrey Bigelow Design Group, Inc.,* 956 F.2d 479, 482 (4th Cir.1992); *Deasy v. Hill,* 833 F.2d 38, 40 (4th Cir.1987). Munday is not entitled to punitive damages for her breach of contract claim under Maryland law.

## IV.

The Court holds that Maryland law controls the breach of contract claim, and that Title VII remedies do not pre-empt Maryland contract law. Accordingly, Munday will receive compensatory damages of $18,366.05 in backpay and interest, and $50,000 for mental anguish. However, Munday is not entitled to punitive damages.

Based upon the foregoing analysis, Plaintiff's motion for summary judgment will be granted, Defendants' motion for summary judgment will be denied, and the Court will enter judgment for Plaintiff in the amount of $68,366.05.

### ORDER

In accordance with the attached Memorandum, it is this 16th day of March 1998, by the United States District Court for the District of Maryland, ORDERED:

1. That Plaintiff's Motion for Summary Judgment (Paper No. 127) BE, and hereby IS, GRANTED; and

2. That Defendants' Motion for Summary Judgment (Paper No. 128) BE, and hereby IS, DENIED; and

3. That Judgment BE, and hereby IS, ENTERED for Plaintiff in the amount of $68,366.05; and

4. That a copy of this Memorandum and Order be mailed to counsel for the parties.